1

The Honorable Ricardo S. Martinez

2

3

4

5

6

7

8        UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
                AT SEATTLE

9

10   ROMEO BALEN, individually, and on behalf of )
     all other similarly situated,                )      No. C07-0645 RSM
                                                  )
11                              Plaintiff,        )
                                                  )      HOLLAND AMERICA LINE'S
12           v.                                   )      MOTION TO COMPEL
                                                  )      ARBITRATION AND DISMISS
13   HOLLAND AMERICA LINE, INC.,                  )      PLAINTIFF'S COMPLAINT
                                                  )
14                              Defendant.        )      **Noted on Motion Calendar:**
                                                  )      July 13, 2007
15                                                )
                                                  )      ***ORAL ARGUMENT***
16   _____        )      ***REQUESTED***

17

18

19

20

21

22

23

24

25

26

27

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM)
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................1

   A.   Balen's POEA Contract ...............................................................................1

   B.   Balen's Arbitration Obligation .....................................................................2

   C.   Balen's Agreement to Pay Deployment Costs................................................3

III.  ARGUMENT .........................................................................................................4

   A.   Balen Has Agreed to Arbitrate in the Philippines.........................................4

      1.   The Convention on the Recognition and Enforcement of Foreign Arbitral Awards Applies to the POEA-Approved Contract, the Standard Terms and the Collective Bargaining Agreement. ..................................................................5

         a.   The Agreement to Arbitrate in the Philippines Is in Writing................6

         b.   The Arbitration Provision Provides for Arbitration in the Territory of a Signatory of the Convention. ....................................................................7

         c.   Balen's Agreement Arises Out of a Commercial Relationship. ............7

         d.   Balen Is Not an American Citizen. ..........................................................8

      2.   The Convention Requires Arbitration of All of Plaintiff's Claims ............................9

   B.   The Court Should Dismiss Balen's Complaint Because the Arbitration Provision Functions as an Enforceable Forum Selection Provision. ............................................10

   C.   This Court Should Decline Jurisdiction and Dismiss Balen's Action under the Doctrine of *Forum Non Conveniens*. ..............................................................14

      1.   Philippine Law Will Govern This Dispute. .............................................15

      2.   The "Public Interest" Factors Favor the Philippines. ...............................16

      3.   The "Private Interest" Factors Favor Litigation in the Philippines. .........................17

IV.   CONCLUSION ......................................................................................................19

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — i
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

## <u>TABLE OF AUTHORITIES</u>

2

**FEDERAL CASES**

3

*Acosta v. Norwegian Cruise Line, Ltd.*,

4
  303 F. Supp. 2d 1327 (S.D. Fla. 2003) ...................................................................6

5
*Adolfo v. Carnival Corporation*,

6
  2003 U.S. Dist. Lexis 24143 (S.D. Fla. 2003) ................................................... 6-7

7
*Amon v. Norwegian Cruise Lines, Ltd.*,
  2002 U.S. Dist. Lexis 27064 (S.D. Fla. 2002) ................................................... 6-7

8

9
*Bastas v. Atlantic Maritime Enterprises Corp.*,
  1988 A.M.C. 2162 (E.D. Pa. 1988) .............................................................. 12, 16

10
*Bautista v. Star Cruises*,

11
  286 F. Supp. 2d 1352 (S.D. Fla. 2003) *aff'd*, 396 F.3d 1289 (11th Cir. 2005) .................... 6-7

12
*Bautista v. Star Cruises*,
  396 F.3d 1289 (11th Cir. 2005) .......................................................... Passim

13

14
*Belloza v. Chios Sky Shipping & Trading, S.A.*,
  1999 A.M.C. 1607 (E.D. La. 1999) .............................................................12

15
*Carnival Cruise Lines, Inc. v. Shute*,

16
  499 U.S. 585 (1991) .................................................................... 10-11

17
*Damigos v. Flanders Compania Naviera S.A.*,
  716 F. Supp. 104 (S.D. N.Y. 1989) .......................................................12, 16

18

19
*Doe v. Royal Caribbean Cruises, Ltd.*,
  2006 U.S. App. Lexis 12300 (11th Cir. 2006)...................................................6

20
*Francisco v. Stolt Achievement MT*,

21
  293 F.3d 270 (5th Cir. 2002), *cert. denied*, 537 U.S. 1030 (2002)................................ Passim

22
*Gschwind v. Cessna Aircraft Co.*,
  161 F.3d 602 (10th Cir. 1998) ...............................................................15

23

24
*Hellenic Lines Ltd. v. Rhoditis*,
  398 U.S. 306(1970).........................................................................15

25
*Ioannides v. Marika Maritime Corp.*,

26
  928 F. Supp. 374 (S.D. N.Y. 1996) .........................................................12, 16

27
*Lauritzen v. Larsen*,
  345 U.S. 571 (1953)........................................................................15

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Lim v. Offshore Specialty Fabricators, Inc.*,
    404 F.3d 898 (5th Cir. 2005) ........................................................ 6, 12-13

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) ........................................................ 16-17

*M/S Bremen v. Zapata Offshore Co.*,
    407 U.S. 1 (1972) ......................................................................... 10-11, 13

*Marinechance Shpg. v. Sebastian*,
    143 F.3d 216 (5th Cir. 1998) .......................................................... 11-12

*Mitsubishi Motors Corp. v. The Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ........................................................................... 11

*Oyuela v. Seacor Marine (Nigeria), Inc.*,
    290 F. Supp. 713 (E.D. La. 2003) ...................................................... 16

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ........................................................................... 15

*Ram v. J.G. Carras, Ltd.*,
    1981 U.S. Dist. Lexis 9731 (D. Mass. 1981) ...................................... 16

*Saroza v. Royal Caribbean Corp.*,
    1992 A.M.C. 428 (C.D. Cal. 1991) ............................................. 14-15, 17

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ....................................................................... 9, 11

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    __ U.S. __, 127 S. Ct. 1184 (2007) ................................................ 14-15

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ............................................................ 17

*U.S. Bulk Carriers, Inc. v. Arguelles*,
    400 U.S. 351 (1971) ............................................................................ 9

*Umali v. Spiaggia Maritime, Ltd.*,
    2004 U.S. Dist. Lexis 23117 (E.D. La. 2004) ...................................... 6, 11

*Webster v. Royal Caribbean Cruises, Ltd.*,
    124 F. Supp. 2d 1317 (S.D. Fla. 2000) ............................................. 13-14

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**STATE CASES**

*Dahiya v. Talmidge International, Ltd.*,
    931 So. 2d 1163 (La. App. 2006) ........................................................................7

*Lobo v. Celebrity Cruises, Inc.*,
    426 F.Supp.2d 1296 (S.D. Fl. 2006), *aff'd,* ___ F.3d ___, 2007 WL 1628073 (11th
    Cir. 2007) .................................................................................................... 5, 7-9

*Sloman Neptun Schiffahrts - A.Gr.*, 611 So.2d 691 (La. App. 1992) ...........................12


**FEDERAL STATUTES**

9 U.S.C. § 2 .........................................................................................................5

9 U.S.C. § 202 .....................................................................................................5

9 U.S.C. §§ 202-208 ...........................................................................................1

9 U.S.C. § 206 .....................................................................................................1

46 U.S.C. § 10313 ...............................................................................................9


**RULES**

Federal Rule of Civil Procedure 12(b)(3) ....................................................1, 10


**OTHER AUTHORITIES**

United Nations Convention on the Recognition and Enforcement of Foreign Arbitral
    Awards, 21 U.S.T. 2517 .................................................................... *passim*

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# I.     INTRODUCTION

Holland America Line Inc. ("HAL") asks the Court to compel arbitration pursuant to 9 U.S.C. § 206 and to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3).

Plaintiff Romeo Balen's Complaint alleges a breach of his employment contract, seeks penalty wages under the Seaman's Wage Act for HAL's alleged failure to pay wages, and requests declaratory relief that the "Standard Terms and Conditions Governing the Employment of Filipino Seafarers On Board Ocean Going Vessels" governs his employment relationship with HAL.  Balen's Complaint does not disclose that he agreed to the very employment practices that he challenges in his Complaint.  In this Motion, however, HAL does **not** ask the Court to rule on the merits of Balen's claim.  Instead, HAL asks the Court to dismiss in deference to the forum that Balen, his Union, HAL and the government of the Philippines have selected for resolution of this dispute, i.e., arbitration in the Philippines.

Balen's claims arise out of his employment, and the "Standard Terms" attached to his Complaint require him to arbitrate in the Philippines all claims arising out of his employment. The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards and its implementing federal legislation, 9 U.S.C. §§ 202-208, require that the Court honor the parties' choice of arbitration and compels dismissal in favor of the Philippine forum.  In the alternative, the Court should dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) based both on the contractual forum selection provision, which requires Balen to pursue his claims in the Philippines, and on the doctrine of *forum non conveniens*.

# II.     FACTUAL BACKGROUND

## A.     Balen's POEA Contract

Balen alleges that he is a native and citizen of the Philippines.  *See* Complaint ¶ 1. HAL employs a large number of Filipino seamen aboard its vessels.  The Philippine Overseas Employment Administration ("POEA"), a division of the Department of Labor and Employment of the Republic of the Philippines, closely regulates employment of Filipino

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 1
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

seaman by foreign corporations.  In particular, the POEA must approve the form and content of foreign seamen employment contracts, as well as other aspects of the hiring process.  *See* Divino Dec. ¶ 2.  Any foreign employer seeking to employ Filipino seamen must do so through a POEA-licensed employment agency.  In this instance, United Philippines Lines, Inc. ("UPL"), a POEA-licensed employment agency, acts as HAL's agent in the Philippines for purposes of employing Filipino seamen.  *See* Divino Dec. ¶ 3.

The POEA approves and administers standard Contracts of Employment for Filipino seamen.  *See* Divino Dec. ¶ 4.  The POEA-approved Contract of Employment incorporates by reference the Standard Terms and Conditions Governing the Employment of Filipino Seafarers On Board Ocean Going Vessels ("Standard Terms"), attached to Balen's Complaint.  *See* Divino Dec. ¶ 4.  On September 19, 2005, Balen signed the POEA-approved employment contract in the Philippines.  *See* Complaint, Ex.1; Divino Dec., Ex. A.  Balen also signed a copy of the Standard Terms and relies on it in his Complaint.  *See* Complaint, Ex. 2; Divino Dec., Ex. B.

### B.    Balen's Arbitration Obligation

Section 29 of the Standard Terms requires arbitration of all claims or disputes arising from a Filipino seaman's employment:

> **SECTION 29. DISPUTE SETTLEMENT PROCEDURES**
>
> In cases of claims and disputes arising from this employment, ***the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators.*** If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrator or panel or arbitrators. If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment.

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 2
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*See* Divino Dec., Ex. C, § 29 (emphasis added). The Standard Terms also provide that all disputes "shall be governed by the laws of the Republic of the Philippines, international conventions, treaties and covenants where the Philippines is a signatory." *Id.* § 31.

Balen indisputably is "covered by a collective bargaining agreement." *Id.* The Associated Marine Officers' and Seamen's Union of the Philippines ("AMOSUP") represents HAL's Filipino seaman. AMOSUP bargains on behalf of its members with companies, including HAL, who seek to employ Filipino seamen. *See* Divino Dec. ¶ 5. In July 2004, UPL as HAL's agent entered into a collective bargaining agreement with AMOSUP governing the period from January 1, 2004, to December 31, 2006 (the "2004 CBA"). *See* Divino Dec., Ex. D. The 2004 CBA covers all Filipino crewmembers serving on board certain listed HAL vessels, including the *Westerdam*, the vessel on which Balen served. *Id.*, App. F. Like the Standard Terms, the 2004 CBA also provides for arbitration of all "dispute[s] or grievance[s] arising in connection with the terms and provisions of this agreement or Individual Employment Contract." *See* Divino Dec., Ex. D at § 19. The POEA reviewed and approved the 2004 CBA. *See* Divino Dec. ¶ 6.

## C.     Balen's Agreement to Pay Deployment Costs

Balen's Complaint focuses on his claim that HAL allegedly violated its obligations when it required him to pay for his deployment costs, i.e., the expenses associated with transporting him from the Philippines to HAL's vessel, the *Westerdam*. Complaint, ¶ 9. Before departing on the *Westerdam*, however, Balen acknowledged his obligation to pay the deployment costs of which he now complains. Balen alleges that he failed to pay as promised and was then discharged in Florida in March 2006. Complaint, ¶ 16.

Historically, HAL had paid deployment costs for its Filipino seamen. That changed, however, when HAL implemented its Gratuity and Beverage Plan (the "Gratuity Plan"), which gave foreign seaman the opportunity to *increase* their income. Before it adopted the Gratuity Plan, HAL told passengers that they were not expected to tip crewmembers, and crewmembers were instructed to inform passengers, if asked, that they did not accept

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 3
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

gratuities.  *See* Byers Dec. ¶ 3.  Under the Gratuity Plan, HAL began charging passengers a daily gratuity fee.  HAL then pooled the gratuity fees and distributed them to participating crewmembers according to a point value by position.  Because passengers could remove the gratuity fee from their bills, HAL believed the Gratuity Plan would create an incentive for crewmembers to maintain and improve HAL's high standard of customer service.  *Id*.  As part of the Gratuity Plan, each participating crewmember agreed to pay the costs associated with the crewmember's deployment.  *Id.*

Even after taking into account the crewmembers' obligation to pay deployment costs, HAL expected the new Gratuity Plan to increase Filipino crewmembers' net income.  *See* Byers Dec. ¶ 4.  In fact, HAL projected that, net of crewmembers' payments to HAL for deployment costs, the Gratuity Plan would increase participating crewmembers' overall compensation by 8-10%.  *Id*.  Further, the Gratuity Plan guaranteed that a seaman would not receive less than a minimum annual salary agreed to between HAL and the Union.  *See id.*; Divino Dec., Ex. E §§ 3.2.1 (on a net basis, "a participating crewmember will not receive less than the annual guarantee as specified by the position"); 3.2.3 ("Should the total entitlement amount under the Gratuity and/or Beverage Plan received by the seafarer be less than the agreed annual guarantee, as indicated in the wage scale of the agreement … the Company shall pay the crew concerned the differential amount.").

None of this was a mystery to Balen.  Before he left the Philippines to join the *Westerdam* in October 2005, Balen signed an acknowledgement of and agreement to the terms of the Gratuity Plan.  *See* Divino Dec. ¶ 8, Ex. F.

## III.    ARGUMENT

### A.    Balen Has Agreed to Arbitrate in the Philippines.

By signing the POEA-approved Contract of Employment and entering into his employment relationship with HAL, Balen agreed to mandatory arbitration in the Philippines.  Under United States law, the Court must honor that choice.

HAL'S MOTION TO COMPEL ARBITRATION AND TO DISMISS (C07-0645 RSM) — 4
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1. **The Convention on the Recognition and Enforcement of Foreign Arbitral Awards Applies to the POEA-Approved Contract, the Standard Terms and the Collective Bargaining Agreement.**

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and its implementing legislation (the "Convention Act") apply to "[a]n arbitration agreement … arising out of a legal relationship, whether contractual or not, which is considered commercial, including a transaction, contract, or agreement described in section 2 of this title." 9 U.S.C. § 202.  Section 2 of Title 9 provides:

> [a] written provision in any maritime transaction or a contract evidencing an transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Courts conduct only "a very limited inquiry" to determine whether to compel arbitration pursuant to the Convention. *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002), *cert. denied*, 537 U.S. 1030 (2002) (citing *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH,* 141 F.3d 1434, 1440 (11th Cir. 1998) (Convention Act "generally establishes a strong presumption in favor of arbitration of international commercial disputes.")).  In particular, courts enforce arbitration provisions under the Convention where an arbitration agreement meets the Convention's four jurisdictional prerequisites that:

> (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a signatory to the Convention, (3) the agreement to arbitrate arises out of a commercial legal relationship, and (4) there is a party to the agreement who is not an American citizen.

*Lobo v. Celebrity Cruises, Inc.*, 426 F.Supp.2d 1296, 1299 (S.D. Fl. 2006), *aff'd, ___* F.3d ___, 2007 WL 1628073 (11th Cir. 2007) (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005)).

Applying this test, several courts have reviewed the POEA-approved employment contract, construed the Convention Act to require enforcement of the same arbitration

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 5
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

provision at issue in this case, and granted a motion to compel arbitration pursuant to Section 29 of the Standard Terms.  *See Doe v. Royal Caribbean Cruises, Ltd.*, 2006 U.S. App. Lexis 12300 (11th Cir. 2006); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 900 (5th Cir. 2005); *Bautista,* 396 F.3d at 1293; *Francisco*, 293 F.3d at 273; *Umali v. Spiaggia Maritime, Ltd.*, 2004 U.S. Dist. Lexis 23117 (E.D. La. 2004); *Acosta v. Norwegian Cruise Line, Ltd.*, 303 F. Supp. 2d 1327 (S.D. Fla. 2003); *Adolfo v. Carnival Corporation*, 2003 U.S. Dist. Lexis 24143 (S.D. Fla. 2003); *Amon v. Norwegian Cruise Lines, Ltd.*, 2002 U.S. Dist. Lexis 27064 (S.D. Fla. 2002).  This Court should reach the same conclusion, as this case satisfies the requirements for enforcement of the arbitration provision under the four-part test.

### a.     The Agreement to Arbitrate in the Philippines Is in Writing.

Article II, section 2 of the Convention provides that "[t]he term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties."  Here, Balen signed his Contract of Employment, as well as the Standard Terms incorporated into his Contract of Employment, and the Standard Terms in Section 29 contain a mandatory arbitration provision.  *See* Divino Dec., Exs. A, B.  Section 29 applies to all disputes "arising from this employment" and requires arbitration for any party "covered by a collective bargaining agreement."  *See* Divino Dec., Ex. C at § 29.  Balen's claims arise from his employment with HAL and thus fall within this contractual commitment to arbitrate. Further, the collective bargaining agreement covering Balen requires arbitration for all disputes arising out of that Agreement.  *See* Divino Dec. at ¶¶ 5, 6, Ex. D.  Balen's agreements satisfy the first test of enforceability under the Convention Act.

Indeed, the circumstances here lend special force to Balen's arbitration commitment. Acting in its capacity as an agency of the Philippine government created to protect the interests of Philippine workers, the POEA approved the Standard Terms, including the arbitration clause.  The District Court in *Bautista v. Star Cruises*, 286 F. Supp. 2d 1352 (S.D. Fla. 2003) *aff'd*, 396 F.3d 1289 (11th Cir. 2005), explained the significance of the POEA's approval as follows:

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 6
SEA 2036773v4 0020397-000083

> Philippine law prohibits foreign employers from hiring
> Philippine workers for overseas employment except through the
> POEA.  Where the Philippine government has acted, through
> the POEA, to protect its citizens and advance their employment
> opportunities with foreign employers, it is not the role of this
> Court to second-guess such actions.

*Id.* at 1363 (citing *Tismo v. M/V Ippolytos*, 776, F. Supp. 928, 932 (D.N.J. 1991) (noting that

the "act of state" doctrine precludes the federal district courts from inquiring into the validity

of the Philippine government's official acts performed within its own territory)).

### b.    The Arbitration Provision Provides for Arbitration in the Territory of a Signatory of the Convention.

The Standard Terms require arbitration in the Philippines and thus satisfy the second

prerequisite to enforceability, as the Philippines has acceded to the Convention.[1]  *See*

*Bautista*, 396 F.3d at 1295 n.7 ("[t]he crewmembers' arbitration provisions provide for

arbitration in the Philippines, a signatory of the Convention").

### c.    Balen's Agreement Arises Out of a Commercial Relationship.

This element focuses on whether the "agreement arises out of a legal relationship,

whether contractual or not, which is considered commercial."  *See Bautista*, 396 F.3d at 1294,

n.7.  The courts that have considered this issue, including the Fifth and Eleventh Circuits, as

well as several district and state courts, unanimously have held that seamen employment

contracts arise out of commercial legal relationships within the meaning of the Convention.

*See, e.g., Francisco,* 293 F.3d at 274; *Bautista,* 396 F.3d at 1300; *Dahiya v. Talmidge*

*International, Ltd.*, 931 So. 2d 1163, 1172 (La. App. 2006) (citing *Francisco*; "seaman

employment contracts are commercial legal relationships covered by the Convention"); *Lobo*,

426 F. Supp. 2d at 1308 (international seamen contracts are "commercial" under the laws of

the United States); *Amon*, 2002 U.S. Dist. Lexis 27064 at *2 (Filipino seaman's employment

pursuant to POEA contract constitutes a commercial legal relationship); *Adolfo*, 2003 U.S.

Dist. Lexis 24143 at *5 (Filipino plaintiff's employment with cruise line "pursuant to the

---

[1] A list of signatories to the Convention appears following the text of the Convention at 21 U.S.T. 2517.  The Philippines acceded to the Convention in 1967.

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 7
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

POEA Contract of Employment, constitutes a commercial legal relationship for the purposes of the Convention"). As the Fifth Circuit explained in *Francisco*:

> Neither the Convention nor the limiting language ratifying the Convention contemplate[s] any exception for seamen employment contracts or employment contracts in general. … On the contrary, they recognize that the only limitation on the type of legal relationship falling under the Convention is that it must be considered "commercial," and we conclude that an employment contract is "commercial."

293 F.3d at 274. *See also Bautista,* 396 F.3d at 1299-1300 (adopting *Francisco*'s reasoning and concluding that "crewmembers' arbitration provisions constitute commercial legal relationships within the meaning of the Convention Act").

Balen's Contract of Employment and Standard Terms governed his employment as a seaman aboard a cruise ship engaged in international commerce. These contracts plainly arise out of and relate to a commercial legal relationship.

### d.    Balen Is Not an American Citizen.

The fourth factor in considering the enforceability of an arbitration agreement under the Convention Act asks whether "there is a party to the agreement who is not an American citizen." *Lobo*, 426 F.Supp.2d at 1299. Here, Balen alleges that he is a Filipino who worked aboard HAL's vessels as a seafarer. *See* Complaint at ¶ 1. Thus, the Complaint on its face satisfies the fourth element.

Further, leaving aside Balen's citizenship, his Complaint focuses on matters centered in the Philippines. The POEA, a Philippine government agency, approved the contract on which Balen's claim depends. Balen signed that contract in the Philippines, where he also signed an acknowledgement of his understanding of and agreement to the Gratuity Plan. Further, HAL's Philippine agent, UPL, negotiated in the Philippines to arrive at the Supplementary Agreement with Balen's Philippine Union, AMOSUP. Given the close nexus between Balen's claims and the Philippines, an arbitration in Balen's home country makes sense – even apart from the binding agreement calling for that method of dispute resolution.

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 8
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

**2.    The Convention Requires Arbitration of All of Plaintiff's Claims**

Balen has brought a claim for unpaid wages under the Seaman's Wage Act, 46 U.S.C. § 10313, as well as asserting a common law breach of contract claim and a request for declaratory relief.  Under Section 29 of the Standard Terms and the Convention Act, Balen must arbitrate *all* of these claims.

The Convention had the broad purpose of

> recogniz[ing] an agreement in writing under which the parties undertake to submit to arbitration ***all or any differences which have arisen*** … between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration

Convention Article II(1) (emphasis added).  "Indeed, the Convention *compels* federal courts to direct qualifying disputes to arbitration"; that being the case, "to read industry-specific exceptions into the broad language of the Convention Act would be to hinder the Convention's purpose."  *Lobo v. Celebrity Cruises, Inc.*, __ F.3d __, No. 06-12468, 2007 WL 1628073, at *3 (11th Cir. 2007) (emphasis in original) (quoting *Bautista,* 396 F.3d at 1299). For that reason, the Eleventh Circuit in *Lobo* rejected the plaintiff's argument that it should exempt from the Convention a claim for penalty wages under the Seamen's Wage Act.  *Id.* at *3.  Relying in part on *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974), the court concluded that it "would hinder the purpose of the Convention and subvert congressional intent" if it failed to apply the Convention to a wage claim.  *Lobo*, 2007 WL 1628073, at *3.[2]

Further, as the Eleventh Circuit explained in *Bautista*, "the goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are

---

[2] The Eleventh Circuit in *Lobo* concluded that the Supreme Court's decision in *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351 (1971), had no bearing on the application of the Convention Act to seamen's wage claims.  In *Arguelles*, the Supreme Court held that the Labor Management Relations Act ("LMRA") did not abrogate a seaman's right to sue in federal court for wages.  As the Eleventh Circuit explained in *Lobo*, however, *Arguelles* did not mention, much less consider, the Convention or the Convention Act – which Congress passed only days before the Court decided *Arguelles.*

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

observed and arbitral awards are enforced in signatory countries." *Bautista*, 396 F.3d at 1299

(citing *Scherk*, 417 U.S. at 520 n.15).  Particularly here, where the Philippine government has

implemented a system for resolving seamen's employment disputes exclusively through an

arbitration tribunal in the seamen's home country, enforcing Balen's agreement would further

the purposes of the Convention Act.

Accordingly, the Convention and the Convention Act require the dismissal of Balen's

Complaint.  Balen instead must submit his claims to arbitration in the Philippines.

**B.     The Court Should Dismiss Balen's Complaint Because the Arbitration Provision Functions as an Enforceable Forum Selection Provision.**

Federal Rule of Civil Procedure 12(b)(3), which permits dismissal for "improper

venue," provides an independent and alternative basis for dismissal.  Leaving aside Balen's

agreement to arbitrate, he has agreed to litigate claims arising out of his employment in the

Philippines.  Under settled law, the Court should enforce that choice of forum.

The United States long ago recognized the importance of honoring contract clauses

that choose foreign forums for litigation.  In the landmark case of *M/S Bremen v. Zapata

Offshore Co.*, 407 U.S. 1, 9 (1972), the Supreme Court announced that it would place "a

heavy hand indeed on the future development of international commercial dealings by

Americans" if courts insisted "on a parochial concept that all disputes must be resolved under

our laws and [in] our courts."  *Id.* at 9.  The Court therefore held that foreign forum-selection

provisions in admiralty cases would be treated "prima facie valid" and would not be set aside

unless the resisting party could meet the heavy burden of showing that enforcement would be

unreasonable and unjust, or that the court should invalidate the clause for such reasons as

fraud or overreaching.  *Id*. at 8-10, 15-17.  The Supreme Court refined its analysis of forum

selection clauses in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991), in

which it held that a reasonable forum selection clause in a cruise ship passenger's passage

contract would be treated as prima facie valid even if not freely negotiated.

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 10
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Although *The Bremen* and *Shute* involved "pure" forum selection clauses, courts have applied the same principles to clauses that select the place of litigation as part of an agreement to arbitrate.  In *Scherk v. The Alberto-Culver Co.*, 417 U.S. 506 (1974), and *Mitsubishi Motors Corp. v. The Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), for example, the Supreme Court relied substantially on *The Bremen* in enforcing arbitration clauses.  As the Court explained in *Scherk*, "an agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum selection clause that posits not only the situs of the suit but also the procedure to be used in resolving the dispute." 417 U.S. at 519.  *See also Francisco,* 293 F.3d at 278 ("foreign arbitration clauses are but a subset of foreign forum selection clauses in general"); *Umali v. Spiaggia Maritime, Ltd.*, 2004 U.S. Dist. Lexis 23117, at *4-6 (E.D. La. 2004) (POEA contract provision requiring submission of claims to the "original and exclusive" jurisdiction of the voluntary arbitrators or panel of arbitrators functions both as an arbitration clause and forum selection clause).

Following the analysis in *The Bremen* and *Shute*, courts routinely have enforced forum selection provisions in seamen employment contracts.  In *Marinechance Shpg. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998), for example, the court analyzed a Philippine choice-of-law/forum clause contained in a seaman's employment contract approved by the POEA and providing that the POEA and the Philippine National Labor Relations Commission "shall have original and exclusive jurisdiction over any and all disputes or controversies arising out of or by virtue of this Contract."  The contract also provided that the parties would resolve all claims through the grievance machinery in the contract, before the POEA and the Philippine Courts of Justice, in that order.  Relying on *Shute*, the court enforced the forum selection provision requiring resolution of the seaman's dispute in the Philippines – even though he suffered his injuries in Mississippi waters.  The court explained:

> The similarities between the present case and [*Shute*] are many. The contracts of employment for seamen aboard international vessels are routine; the seamen individually do not have much bargaining power.  The selection of a forum in advance reduces the vessel owner's exposure to suits in forums all over the

1    world.  Furthermore, it informs the seamen of where their
     causes of action can be maintained.

2    *Id*. at 221.  The Fifth Circuit concluded that the forum selection clause approved by the

3    POEA, a Philippine government agency, was fundamentally fair and enforceable with respect

4    to the Filipino seamen.  *Id*. at 221.  Many other cases, cited in the note, likewise have

5    enforced forum selection clauses in seamen's contracts.[3]

6    More recently, the Fifth Circuit in *Lim*, 404 F.3d at 905-906, enforced a POEA

7    arbitration provision under both the Convention Act and forum selection analysis.  The court

8    first noted that under the standard enunciated in *The Bremen*, the party opposing enforcement

9    of the forum selection provision bears a heavy burden.  The court continued:

10                [G]iven the strong federal policy in favor of international
                  arbitration agreements in general, and the application of the
11                Convention to seamen's employment contracts in particular, the
                  overall balance of public policy concerns favors enforcing the
12                arbitration agreements. Plaintiffs do not meet the "high burden
                  of proof" necessary to show public policy renders the arbitration
13                clause unreasonable.

14   *Id*. at 906.  In enforcing the POEA provision, the Fifth Circuit categorically rejected the

15   plaintiff's effort to impugn the ability of the Philippine forum to protect the contractual,

16   common law, and statutory rights of Filipino workers.  *Id*. at 907-08.  Like the plaintiff in

17   *Lim*, Balen has agreed to submit his claims, including his statutory claim for penalty wages

18

19   _____
     [3] *See, e.g., Ioannides v. Marika Maritime Corp.*, 928 F. Supp. 374 (S.D. N.Y. 1996)
20   (enforcing Greek forum selection/choice of law provision contained in collective bargaining
     agreement against personal representatives of deceased Greek nationals even though vessel
21   owned and operated by U.S. interests based in New York); *Damigos v. Flanders Compania
     Naviera S.A.*, 716 F. Supp. 104, 105 (S.D. N.Y. 1989) (Greek forum selection/choice-of-law
22   clause in Greek seaman's collective bargaining agreement required dismissal of negligence
     claim against owner of Greek-flagged vessel on which they served); *Bastas v. Atlantic
23   Maritime Enterprises Corp.*, 1988 A.M.C. 2162 (E.D. Pa. 1988) (granting motion to dismiss
     pursuant to Greek forum selection/choice of law clause in Greek citizen's employment
24   contract negotiated through collective bargaining agreement; action for injuries sustained
     aboard Greek vessel in Philadelphia harbor and requiring treatment in Philadelphia); *Prado v.
25   Sloman Neptun Schiffahrts - A.Gr.*, 611 So.2d 691 (La. App. 1992) (Philippine choice-of-
     law/forum clauses in employment contract required dismissal even though Louisiana statute
26   prohibited *forum non conveniens* dismissal and defendant's vessel called to New Orleans
     every 12 days); *Belloza v. Chios Sky Shipping & Trading, S.A.*, 1999 A.M.C. 1607 (E.D. La.
27   1999) (Nicaraguan seaman injured while Panamanian vessel moored in New Orleans; court
     enforced Greek forum selection clause in employment contract and dismissed plaintiff's suit).

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 12
SEA 2036773v4 0020397-000083

under the Seaman's Wage Act, to arbitration in the Philippines before arbiters empowered to adjudicate any seaman employment related dispute under any law.

As *Lim* suggests, courts have honored contractual forum selection clauses in the context of seamen's claims similar to those asserted here. For example, in *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317 (S.D. Fla. 2000), the district court honored a forum selection clause and dismissed a seaman's action for improper venue. The seaman, a Nicaraguan citizen, alleged that the cruise line defendant had failed to reimburse his pre-employment medical examination costs, allegedly in violation of both the contract of employment and his union's collective bargaining agreement ("CBA"). But the same CBA on which the seaman relied ***also*** included a forum selection provision requiring all suits to be brought either in Norway or the country where the employee was domiciled. Citing *The Bremen*, the district court held that "forum selection clauses in admiralty cases are presumptively valid and enforceable"; to overcome the presumption, "the party challenging the clause must make a strong showing that the clause is unreasonable under the circumstances." *Id*. at 1321. Where the plaintiff's union had bargained for the forum selection clause in negotiating the CBA, the plaintiff could not meet that burden. *Id*. at 1323. In reaching that conclusion, the court relied on precedent pertaining to the negotiation of Philippine POEA contracts:

> In *Marinechance* [143 F.3d 216 (5th Cir. 1998)], the Court noted that the forum selection clause was imposed by an arm of the Philippine government, and found that this intervention shifted the balance of power slightly in favor of the employee in much the same way that a labor union or legislative enactment of minimum work standards increased the level of protection of employees in the United States.

*Id*. at 1323. Rejecting the plaintiff's efforts to disavow the forum selection provision while seeking to enforce another provision of the same CBA, the court held that plaintiff "cannot be permitted to pick and choose the provision of the CBA he wishes to enforce and those he wishes to ignore when bringing a lawsuit for damages under the CBA." *Id*. The court

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 13
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

explained that where the "claims arise under and are dependent on the very contract in which the forum selection clause exists, the forum selection clause should be enforced." *Id.*

The same reasoning applies here. The POEA exists to protect the interests of Filipino seamen. It has mandated the Standard Terms that govern Balen's relationship with HAL, as incorporated into his Contract of Employment – including the clause selecting the Philippines as the forum for resolving disputes arising out of Balen's overseas employment. Balen relies on that contract to establish his claims. Because he cannot pick and choose the contract provisions that the Court should enforce, he must litigate in the forum chosen in his contract.

Thus, whether the Court analyzes this issue under the Convention or under forum selection enforcement standards, the overwhelming weight of authority mandates that Balen must pursue his claims, if at all, in the Philippines.

## C.    This Court Should Decline Jurisdiction and Dismiss Balen's Action under the Doctrine of *Forum Non Conveniens*.

Even if Balen had not agreed to submit his disputes to arbitration, and to do so in the Philippines, that country would be the most logical and convenient forum to adjudicate his claims. Thus, the doctrine of *forum non conveniens* provides a third independent and alternative basis for dismissal of Balen's Complaint.

"*Forum non conveniens* ('f.n.c.') is a common law doctrine, which allows a court having jurisdiction over the subject matter and parties to decline to exercise its jurisdiction where litigation in the forum would be seriously inconvenient for one of the parties and a more convenient forum is available elsewhere." *Saroza v. Royal Caribbean Corp.*, 1992 A.M.C. 428 (C.D. Cal. 1991) *aff'd* 1993 U.S. App. Lexis 14975 (9th Cir. 1993). Although a defendant invoking the doctrine of *forum non conveniens* "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," the "presumption in the plaintiff's favor 'applies with less force'" where the forum is not the plaintiff's home forum. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, __ U.S. __, 127 S. Ct. 1184, 1191 (2007). Where a foreign plaintiff selects a U.S. forum, as Balen has done in this case, "the private and public interest

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 14
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

factors need not so heavily favor the alternate forum," *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998), and "dismissal will ordinarily be appropriate where … the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

In *Saroza*, for example, Royal Caribbean Lines ("RCL") hired plaintiff, a Filipino citizen, in the Philippines and employed him aboard an RCL cruise ship pursuant to a contract mandated by the POEA.  As in this case, the contract provided that all claims would be resolved exclusively through POEA adjudication procedures.  Plaintiff filed suit in California under the Jones Act for injuries sustained aboard the ship, and RCL moved to dismiss pursuant to the doctrine of *forum non conveniens*.  In addressing the motion, the *Saroza* court first noted that it had broad discretion to retain or decline jurisdiction.  *Id*. at 429 (citing *Zipfel v. Halliburton Co.*, 820 F. 2d 1438, 1443 (9th Cir. 1987)).  Applying settled Ninth Circuit precedent, the court analyzed the *forum non conveniens* issues using a two-pronged approach: first, the court determined the law that would apply to the case; second, having found that foreign law applied, the court considered various private and public interest factors.  *Id.* at 429-30.  In this case, that same approach to the *forum non conveniens* analysis counsels in favor of dismissing this action so that Balen may pursue litigation, if at all, in the Philippines.

### 1.    Philippine Law Will Govern This Dispute.

Balen's contract establishes the applicable law.  The POEA-approved Standard Terms provide that that the law governing any dispute "arising out of or in connection with" Balen's employment contract shall be the "laws of the Republic of the Philippines, international conventions, treaties and covenants where the Philippines is a signatory."[4]  Divino Dec., Ex.

---

[4] Because *Saroza* involved a Jones Act tort action, that court's choice of law analysis included consideration of eight factors identified in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306(1970).  In the end, the *Saroza* court concluded that "[g]iven plaintiff's POEA contract, the adequate remedy available under it, and the strong interest of the Philippines in regulating its nationals employed overseas, on balance, the Jones Act should not apply to plaintiff's claims."  *Saroza*, 1992 A.M.C. At 432-33.  Because Balen has asserted a claim rooted in contract, and because the contract chooses Philippine law, the choice of law analysis here need not address *Lauritzen* or *Rhoditis*.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

C, § 31.  Because each of Balen's claims grows out of HAL's contractual obligations as Balen sees them, this dispute necessarily will be decided under Philippine law.

Courts applying the *forum non conveniens* doctrine in foreign seamen cases have assigned great weight to the existence of a forum selection and/or choice of law provisions in the seaman's employment contract in finding that dismissal under the doctrine is appropriate. *See, e.g., Bastas v. Atlantic Maritime Enterprises Corp.,* 1988 A.M.C. 2162 (E. D. Pa. 1988); *Ioannides v. Marika Maritime Corp.,* 928 F. Supp. 374 (S.D.N.Y. 1996); *Damigos v. Flanders Compania Naviera S.A.*, 716 F. Supp. 104 (S.D.N.Y. 1989); *Ram v. J.G. Carras, Ltd.*, 1981 U.S. Dist. Lexis 9731 (D. Mass. 1981); *Oyuela v. Seacor Marine (Nigeria), Inc.*, 290 F. Supp. 713, 725 (E.D. La. 2003) (British forum selection and choice of law in seaman's contract evidenced parties "expressed a preference for British law and a British forum"). These courts have relied on the logical assumption that the choice of law reflects the parties' assessment of the chosen state's interest in the dispute.  Thus, unless the private and public interest factors weigh heavily the other direction (and they do not in this case, as discussed below), a court should dismiss in deference to the forum whose law will govern.

## 2.    The "Public Interest" Factors Favor the Philippines.

The public interest factors weigh in favor of dismissal.  The public interest factors relevant to a *forum non conveniens* analysis include: (1) local interest in the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries (including considerations of court congestion and the cost of resolving a dispute unrelated to this forum); (4) the interest of alternative fora in deciding local disputes; and (5) the interest in issues of foreign law being decided by foreign tribunals.  *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001).

Here, the Philippines has a greater interest in this dispute than does the Western District of Washington.  Balen seeks relief under a contract mandated by the POEA, an arm of the Philippine government.  His allegations implicate the terms of a collective bargaining agreement negotiated by his Philippine Union, AMOSUP, to govern its Filipino constituency.

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 16
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

Further, a ruling on the contract issues with respect to the Standard Terms may have an impact on all companies that contract for Filipino seamen pursuant to those Standard Terms, including companies having little or no nexus with the United States. In sum, the Philippines has every reason to bear the burden of this litigation, which Balen hopes to use as a vehicle to adjudicate the rights of "Filipino seafarers." *See* Complaint, ¶ 26 (defining proposed class). *See Saroza*, 1992 A.M.C. at 435 ("the Philippine government has demonstrated a keen interest in regulating employment claims of its overseas workers under its comprehensive system").

Further, the Philippines would provide an adequate forum for the resolution of Balen's claims. In the Ninth Circuit, an alternative forum is "adequate" if (1) the defendant is amenable to service of process there, and (2) the forum provides "some remedy" for the wrong at issue. *Lueck*, 236 F.3d at 1143. "This test is easy to pass; typically, a forum will be inadequate only where the remedy provided is 'so clearly inadequate or unsatisfactory, that it is no remedy at all.'" *Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163, 1178 (9th Cir. 2006) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)). And indeed, "[i]n a long list of cases in [the Ninth Circuit] and other circuits, the Philippines has been found to be an adequate forum." *Tuazon*, 433 F.3d at 1179 n.7 (citing cases). *See also Saroza*, 1992 A.M.C. at 433 (referring to "obvious adequacy" of the POEA system for resolving worker compensation claims).

### 3. The "Private Interest" Factors Favor Litigation in the Philippines.

A court also must weigh "private interest" factors in deciding whether to dismiss on *forum non conveniens* grounds. Those factors include (1) the residence of the parties and the witnesses; (2) access to sources of proof; (3) the cost of obtaining willing witnesses; (4) the availability of compulsory process for unwilling witnesses; and (5) the policy favoring an expeditious trial. *See Lueck*, 236 F.3d at 1145; *Saroza,* 1992 A.M.C. at 434.

Here, the balance of private interests also supports resolution of the dispute in the Philippines. The documents relating to Balen's breach of contract claim are located in the Philippines, where he formed the employment relationship, signed his employment contract,

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 17
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

received his orientation with respect to the Gratuity Plan, and signed his acknowledgement of and agreement to the terms of the Gratuity Plan. *See* Divino Dec., ¶ 8. Further, any background evidence concerning the POEA and AMOSUP agreements will reside in the Philippines, where UPL negotiated the CBA with AMOSUP, the Philippine seafarers' union, and where it interacted with the POEA. *See* Divino Dec., ¶¶ 6, 7. Finally, Balen has defined his proposed class as consisting of "Filipino seafarers" who may or may not be current HAL employees, have no discernible connection with Seattle, and will more likely to take an interest in proceedings in the Philippines, where they live, than in Seattle, where HAL maintains its headquarters. *See* Complaint, ¶ 26 (defining proposed class).

The Philippine government, through the POEA, has established a dispute resolution mechanism and a comprehensive system of protecting its seafaring citizens in their employment abroad. In furtherance of that system, the POEA has mandated that all foreign employers of its seamen (including HAL) agree to application of Philippine law in a dispute resolution process in the Philippines. As other courts have done before in similar circumstances, this Court should dismiss in deference to the Philippine forum.

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 18
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

### IV.    CONCLUSION

2      For all of the foregoing reasons, HAL respectfully submits that plaintiff's action must

3  be dismissed in favor of arbitration in the Philippines pursuant to the mandatory arbitration

4  provision contained in plaintiff's employment contract.  In the alternative, the Court should

5  either (a) enforce the Philippine forum selection clause under the reasoning of *The Bremen*

6  and its progeny, or (b) determine that Balen's claims are more appropriate for adjudication in

7  the Philippines and decline jurisdiction under the doctrine of *forum non conveniens*.

8      Dated this 21st day of June, 2007.

9                                          Davis Wright Tremaine LLP
                                           Attorneys for Holland America Line Inc.
10

11                                         By  */s/ Stephen M. Rummage*
                                              Stephen M. Rummage
12                                            WSBA #11168
                                              1201 Third Avenue
13                                            Suite 2200
                                              Seattle, WA 98101-3045
14                                            Telephone: (206) 757-8136
                                              Fax: (206) 757-7136
15                                            E-mail: steverummage@dwt.com

16

17

18

19

20

21

22

23

24

25

26

27

HAL'S MOTION TO COMPEL ARBITRATION AND
TO DISMISS (C07-0645 RSM) — 19
SEA 2036773v4 0020397-000083

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700