# EXHIBIT D

HAL Flt. Vsls.
01.01.04 - 12.31.06



COLLECTIVE BARGAINING AGREEMENT
( AMOSUP )


BETWEEN


ASSOCIATED MARINE OFFICERS' AND
SEAMEN'S UNION OF THE PHILIPPINES


AND


HOLLAND AMERICA LINE INC.


REPRESENTED BY


UNITED PHILIPPINE LINES, INC.


**Exhibit D
Page 1 of 31**

STATISTICAL INFORMATION & DATA

United Philippine Lines, Inc.

UPL Building, Sta. Clara St.,
Intramuros, Manila

a.  Industrial activity in which the Company is engaged:

Manning

b.  Total number of employees/workers employed by Company:

c.  Total number of employees/workers in the bargaining unit:

d.  Date of effectivity and expiration of the CBA immediately preceding the above mentioned CBA:

JANUARY 01, 2004 - DECEMBER 31, 2006

e.  Place of employment of employees/workers in the bargaining unit:

Manila,  Philippines

f.  Source of Agreement:  Voluntary agreement negotiated between the parties to the Contract.

Yes

CERTIFIED CORRECT:

Mr. Fernando V. Lising
President

**Exhibit D**
**Page 2 of 31**

ASSOCIATED MARINE OFFICERS' & SEAMEN'S UNION OF THE PHILIPPINES - PTGWO - ITF
(An Affiliate of the International Transport Workers Federation London, U.K.)
Seamen's Center, Cabildo cor. Sta. Potenciana Sts., Intramuros, Manila
Tel. 527-04-91 to 98

July 7, 2004

Mr. Fernando V. Lising
President
United Philippine Lines, Inc.

Dear Mr. Lising:

In line with our fundamental goal of maintaining fair and harmonious relations with you while advancing and protecting the interest of our members, we wish to inform your good office that effective the month of September, 1986, we require the Owner's representative to submit to our Union copies of the seaman's/allottee's Bank Passbook, allotment slip forms and certification from the authorized bank that it is the depository bank of the allottee, and we shall from time to time request that the allottee be made available to the Union Office for periodical verification, as a pre-condition for the signing of the Collective Bargaining Agreement between your Company and our Union.

The absolute significance we give to your conformity and compliance with the aforementioned requirements is equal to the import and binding effect of a public document for all legal purposes as are intended by this instrument.

We hope and thank you for the usual cooperation.

Very truly yours,

ASSOCIATED MARINE OFFICERS'&
SEAMEN'S UNION OF THE PHILIPPINES

Capt. Gregorio S. Oca
President

CONFORME:

Mr. Fernando V. Lising
President

SUBSCRIBED AND SWORN to before me this ___ day of _July_, 200___, affiants exhibiting their Residence Certificates as follows:

Capt. Gregorio S. Oca

Res. Cert. 12374599
Issued at Manila
On January 20, 2004

Mr. Fernando V. Lising

Res. Cert. 01552518
Issued at Manila
On January 12, 2004

Doc. No. 355
Book No. CCLXXX
Page No. 71
Series of 200___

NOTARY PUBLIC

Until December 31, 20....

**Exhibit D**
**Page 3 of 31**

## COLLECTIVE BARGAINING AGREEMENT

**KNOW ALL MEN BY THESE PRESENTS:**

This AGREEMENT made and entered into at Manila, Philippines, this 7th day of July 2004 by and between:

United Philippine Lines, Inc., a duly registered corporation, Attorney-in-fact of Holland America Line Inc., hereunto represented by its President, Mr. Fernando V. Lising and with offices at UPL Building, Sta. Clara St., Intramuros, Manila , hereinafter referred to as the "COMPANY";

-AND-

ASSOCIATED MARINE OFFICERS & SEAMEN'S UNION OF THE PHILIPPINES (AMOSUP), affiliate of the PHILIPPINE TRANSPORT AND GENERAL WORKERS ORGANIZATION, an affiliate of I.T.F., a labor organization duly registered with the Department of Labor and Employment, herein represented by its President, CAPT. GREGORIO S. OCA, with principal office at the Seamen's Center, Cabildo cor. Sta. Potenciana Streets, Intramuros, Manila, Philippines, hereinafter referred to as the "UNION".

## WITNESSETH: THAT

The UNION is the sole and exclusive representative of all Filipino crewmembers for the purpose of Collective Bargaining Agreement on board:

The Company Vessels as listed in Appendix "F"

The COMPANY and the UNION have agreed to conclude this collective bargaining agreement with effective period from JANUARY 01, 2004 - DECEMBER 31, 2006 and hereby adopt for this purpose, all the terms, conditions and provisions of the existing COLLECTIVE BARGAINING AGREEMENT FOR FILIPINO OFFICERS and CREW between the ASSOCIATED MARINE OFFICERS' AND SEAMEN'S UNION OF THE PHILIPPINES (AMOSUP) and HOLLAND AMERICA LINE INC. for the said vessel/s.

IN WITNESS WHEREOF, the parties have hereunto affixed their signatures this 7th day of July, 2004, at the City of Manila, Philippines.

UNITED PHILIPPINE LINES, INC.

ASSOCIATED MARINE OFFICERS
& SEAMEN'S UNION OF THE
PHILIPPINES PTGWO-ITF

By:

By:

Mr. Fernando V. Lising
President

Capt. Gregorio S. Oca
President

SIGNED IN THE PRESENCE OF:

Page 4

REPUBLIC OF THE PHILIPPINES)
CITY OF MANILA ) s.s.

BEFORE ME NOTARY PUBLIC for and in the City of Manila, Philippines personally appeared Mr. Fernando V. Lising in his capacity as President of United Philippine Lines, Inc. and CAPT. GREGORIO S. OCA, in his capacity as President of the ASSOCIATED MARINE OFFICERS' & SEAMEN'S UNION OF THE PHILIPPINES PTGWO-ITF known to me and to me known to be the same persons who executed the foregoing instrument consisting of thirty one (31) pages including this page where the Acknowledgement is written, signed by the parties on pages ii and iii and in the left hand margin each and every page thereof, and acknowledged to me that the same is their free act and deed of the companies represented.

The affiants exhibited to me their Residence Certificates as follows:

1. Mr. Fernando V. Lising          Res. Cert. 01552518
                                    Issued at Manila
                                    On January 12, 2004

2. Capt. Gregorio S. Oca           Res. Cert. 12374599
                                    Issued at Manila
                                    On January 20, 2004

WITNESS MY HAND AND NOTARIAL SEAL THIS _____ day of ____JULY____ 20__ at Manila, Philippines.

NOTARY PUBLIC

Until December 31, 20 __

Doc. No. 356
Page No. 72
Book No. CCCXXX
Series of 2004

EMMANUEL ...

JOINT CERTIFICATION

WE, the undersigned authorized representative and officers of   United Philippine Lines, Inc.   and the  ASSOCIATED MARINE

OFFICERS' & SEAMEN'S UNION OF THE PHILIPPINES  PTGWO-ITF, do hereby request for the certification of our Collective

Bargaining  Agreement pursuant to the requirement of the New Labor Code and for this purpose,  do hereby declare and certify under

oath that there is no pending petition  for certification election filed with the Bureau of Labor Relations and there is  no other union with

the management of  United Philippine Lines, Inc.


UNITED PHILIPPINE LINES, INC.

ASSOCIATED MARINE OFFICERS'
& SEAMEN'S UNION OF THE
PHILIPPINES-PTGWO-ITF

By:

By:

Mr. Fernando V. Lising
President

Capt. Gregorio S. Oca
President


O A T H


SUBSCRIBED AND SWORN to before me this _____ day of  J U L Y _____  200__  at the City  of  Manila, Philippines, Mr.

Fernando V. Lising  and  Capt. Gregorio S. Oca exhibited to me their Res. Cert. #  01552518  Issued at Manila  on  January 12, 2004

and  12374599 issued at Manila on January 20, 2004.


NOTARY PUBLIC
Until December 31, 20___

Doc. No. 357
Page No. 72
Book No. CCLXXX
Series of 2004.

**Exhibit D**
**Page 6 of 31**

REPUBLIC OF THE PHILIPPINES)
CITY OF MANILA ) s.s.

### JOINT AFFIDAVIT

WE, GREGORIO S. OCA  and JESSICA MAE V. GENATO, both of legal age, Filipino citizens, married with postal address at Seamen's Center Cabildo cor. Sta. Potenciana Streets, Intramuros, Manila, after having duly sworn to oath depose and say:

1. That we are the incumbent President and Administrative Secretary of the Associated Marine Officers' & Seamen's Union of the Philippines, with home office at Seamen's Center Cabildo cor. Sta. Potenciana Streets, Intramuros, Manila;

2. That as such officers of the Union, we know for a fact that there was negotiated and executed a Collective Bargaining Agreement between the Associated Marine Officers' & Seamen's Union of the Philippines and   United Philippine Lines, Inc.;

3. That the aforestated Collective Bargaining Agreement has been duly approved and ratified by the MAJORITY of the officers and seamen within the appropriate bargaining unit.

That this joint affidavit is being executed for the purpose of compliance to the letter of the Officer-in-Charge of the Bureau of Labor Relations dated April 28, 1975.

Further Affiants sayeth naught.

Jessica Mae V. Genato
Administrative Secretary
Res. Cert. 14700436
Issued at Manila
On January 21, 2004

Capt. Gregorio S. Oca
President

Res. Cert. 12374599
Issued at Manila
On January 20, 2004

SUBSCRIBED AND SWORN to before me this ___20__ th of __JULY_____ 200_7_ , at the City of Manila, Philippines.

NOTARY PUBLIC
Until December 31, 20__

Doc. No. ___358__
Page No. ___72__
Book No. ___CCLXXX__
Series of 200_7_

Page 7

COLLECTIVE BARGAINING AGREEMENT

Holland America Lines

2 0 JUL 2004

KNOW ALL MEN BY THESE PRESENTS:

This AGREEMENT made and entered into at Manila, Philippines, this 7th day of July 2004 by and between:

UNITED PHILIPPINE LINES, INC., represented by its Attorney-in-fact HOLLAND AMERICA LINE INC., the former being a domestic corporation existing under the laws of the Republic of the Philippines, represented by its President, MR. FERNANDO V. LISING, with principal offices at UPL Building, Sta. Clara Street, Intramuros, Manila, Philippines, hereinafter referred to as the "COMPANY".

-AND-

ASSOCIATED MARINE OFFICERS & SEAMEN'S UNION OF THE PHILIPPINES, affiliate of the PHILIPPINE TRANSPORT AND GENERAL WORKERS ORGANIZATION, an affiliate of I.T.F., a labor organization duly registered with the Department of Labor and Employment, herein represented by its President, CAPT. GREGORIO S. OCA, with principal office at the Seamen's Center, Cabildo cor. Sta. Potenciana Streets, Intramuros, Manila, Philippines, hereinafter referred to as the "UNION".

WITNESSETH: THAT

WHEREAS, the UNION is the sole and exclusive representative of all Filipino crewmembers for the purpose of Collective Bargaining Agreement on board the vessel.

THE COMPANY VESSELS AS LISTED IN APPENDIX "F"

WHEREAS, it is the desire of the parties to this Agreement to promote and maintain harmonious relations between the COMPANY and the UNION based on mutual respect of rights which will serve the best interest of all concerned:

NOW THEREFORE, for and in consideration of the above premises and of the following covenants and conditions, the COMPANY and the UNION agree as follows:

Art. 1     UNION SECURITY

1.1     The COMPANY recognizes the UNION as the sole and exclusive collective bargaining representative of all Filipino seafarer on board vessel/s listed in Appendix "F".

1.2     All such seafarers covered by this Agreement engaged from the Philippines on board any vessel/s owned, chartered or operated by the COMPANY, shall as a condition of their employment in this COMPANY, be members of the UNION and maintain their membership in good standing in accordance with the Constitution and By Laws of the UNION.

1.3     The COMPANY agrees that seamen who maybe engaged after the signing of this Agreement, shall be drawn/selected from among the qualified members in the UNION and upon employment on board vessel/s all such seafarers shall maintain their membership in good standing in accordance with the Constitution and By Laws of the UNION as a condition of their engagement with the COMPANY.



Page 1



**Exhibit D**
**Page 8 of 31**

Holland America Lines

**Art. 2    DURATION AND EFFECTIVITY**

2.1    Subject to the provisions hereinafter provided, this Collective Bargaining Agreement shall be in effect for a period of *THREE (3) years* from *January 01 2004 to December 31 2006*. However, in the event that a vessel is on an incomplete voyage at the time of expiration of this Agreement, it shall automatically be extended to the date of arrival at the next major port if renewal is not mutually open where repatriation of crew could be arranged without interfering with the normal operations of the vessel/s. However, if renewal of this Agreement is mutually agreed upon, the seafarer shall continue to work until a new agreement is formalized.

2.2    The Union agrees that the first three (3) months of service during the first term of employment with the Company shall be regarded as a probationary period and both the seafarer and/or the Company shall be entitled to terminate the employment for just, valid or authorized, causes prior to the expiry of the time contract during this period. In such event the cost of repatriation shall be the responsibility of the party who gives notice of termination and the Seafarer shall not be entitled to separation pay. If during this period the seafarer is found unsuitable for the position he is holding, he may be disembarked and his contract terminated without any rights to any additional indemnity or may be demoted in rank at the discretion of the COMPANY. Provided, however, that costs of repatriation shall be for the account of the COMPANY. Provided furthermore, that any termination of contract and/or demotion during this trial/probationary period of employment shall be considered as "just cause" and/or in lawful exercise of the COMPANY's prerogative in the selection of its employees.

2.3    Both parties agree that should the seafarer be disembarked before the completion of his contract or employment for cause/s not attributable to him, he shall be paid the wages corresponding to the time contracted provided, however, that should the reason for his dismissal be for legal and just cause, the seafarer shall be paid only until the effective date of his dismissal or disembarkation from the vessel.

2.4    The parties agree that in case a seafarer fails to render service for the time herein prescribed without justifiable cause, reason or motive, his right to receive further wages, benefits and privileges mentioned hereinafter shall be forfeited and his failure shall make him liable to reimburse the COMPANY of any expenses which may be incurred in his repatriation.

**Art. 3    TRANSPORTATION AND CONVEYANCE**

3.1    The COMPANY agrees to pay for the deployment cost covering transportation, board and lodging, and other incidentals to any seafarer covered by this Agreement from the port of Manila to the port of employment and repatriation.

3.2    The COMPANY agrees that if a seafarer covered by the Agreement is left behind by the vessel for reason of injury or illness, he shall be provided with transportation to catch up with the vessel or repatriated at the option of the COMPANY. However, in the event such seafarer is left behind through his own fault or by desertion, the COMPANY reserves the right to deduct from his earnings all expenses incurred by the COMPANY for the repatriation of the seafarer. Should his wages prove to be insufficient to cover such expenses, the COMPANY has the right to take action to collect the sum due.

3.3    The COMPANY agrees that prior to departure from Manila of any seafarer, he shall be granted a cash advance not to exceed fifty percent (50%) of his pay which shall be deductible against his accruing wages for a period not exceeding two (2) months.

**Art. 4    JOB SECURITY**

4.1    The UNION recognizes the exclusive rights of the COMPANY to hire all the seamen as listed in Appendix "D" of this Agreement, in accordance with the COMPANY'S standards of qualifications, experience, competence, health and character and seniority of such seamen, and to transfer, lay-off or discipline such seamen for incompetence, inefficiency, neglect of work, bad behavior.



Page 2

Holland America Lines

perpetration of crime, drunkeness, insubordination, desertion, violation of laws and regulations of the COMPANY's vessel/s and other just and proper cause.

4.2    The UNION hereby recognizes and respects the contractual nature of the employment of such seafarers in the vessel/s of the COMPANY, which is in accordance with the Individual Employment Contract entered into between the seafarer and the COMPANY and recognizes the right of the COMPANY to consider the employment of such seafarers as terminated after the expiration of such contract and appoint new replacement for such seafarers, subject to and in accordance with the terms and conditions of the Individual Contract, as well as the provisions of this Agreement.

### Art. 5    COMMENCEMENT AND DURATION OF EMPLOYMENT

5.1    Subject to the provisions hereinafter provided, the engagement of a seafarer shall be at the time of departure from Manila to the date of expiration of contract or arrival in Manila, unless terminated for just cause or causes enumerated in this Agreement. It is mutually agreed that the term of service of of officers covered by this Agreement shall be  TEN (10) months and of the ratings twelve (12) months as covenanted by the parties and subject to the provisions of Article 14.4. The Company  may however, extend the individual term by three (3) months or shorten it by two (2) months until the vessel on which the seafarer is serving reaches a convenient port where repatriation is suitable.  The Company can further transfer individual seafarer to other vessel during their contract term provided all wages and benefits remain at the same minimum level.

### Art. 6    GENERAL POLICY OF EMPLOYMENT

6.1    The COMPANY and the UNION shall maintain close contact in order that minor problems which may occur with regard to interpretation and implementation of this Agreement may be settled in a most harmonious and business-like manner.

6.2    Individual Employment Contracts shall be signed by all seafarers.  The Collective Bargaining Agreement shall form an integral part of such individual employment contract for the life of this Agreement.

6.3    In the event that the Company cannot continue the employment term of the seafarer due to the following reasons:

   a.    Shipwreck; or total loss of the vessel
   b.    lay-up for repairs of more than 30 days;
   c.    withdrawal from service;
   d.    sale of vessel;
   e.    seizure/arrest of the vessel;
   f.    change of ship management,

the COMPANY shall have the right to terminate the services of the seafarer of such  vessel prior to expiration of the Individual Contract of Employment provided that such seamen are paid separation pay equivalent to one (1) month basic pay provided no subsequent employment is offered by the COMPANY within ninety (90) days.

6.4    In the event that the Company shall be unable to continue employment of the seafarer due to stranding, sinking, seizure, total loss or constructive total loss of vessel/s the COMPANY shall arrange to repatriate the seafarer to the Philippines. Furthermore, affected seafarer shall continue to receive their monthly wage (Column II of Appendix A) until arrival to the Philippines plus earned vacation.  Such payment shall terminate the employment of a seafarer.  (to determine the daily rate, divide Column I over 30.)



Page 3



**Exhibit D**
**Page 10 of 31**

Holland America Lines

**Art. 7    WORKING HOURS**

7.1    In port and at sea, the normal hours of work shall be 77 hours per week. The Company will endeavor to provide sufficient rest period between scheduled shifts.

7.2    Whenever possible, a sufficient number of men shall be employed in performing overtime jobs in order to minimize the same and to promote safety of lives at sea.

7.3    Compensation for overtime is included in the first 77 hours of work during the week. The over time rate in appendix "A" will be utilized for payment of hours worked in excess of 77 hours in a week. It is understood, however that overtime work will be performed at the direction of the master  for the deck and catering department and the chief engineer for the engine department, and payment thereof shall only be made on their authorizations.

**Art. 8    HOLIDAYS**

8.1    In addition to Sundays, the following Philippine holidays only shall be regarded as off-days:

| | |
|---|---|
| New Year's Day | - January 1st |
| Maundy Thursday | - Movable date |
| Good Friday | - Movable date |
| Araw ng Kagitingan (Bataan and Corregidor Day) | - April 9 |
| Labor Day | - May 1st |
| Independence Day | - June 12th |
| National Heroes  Day | - Last Sunday of August |
| All Saints Day | - November 1st |
| Bonifacio Day | - November 30th |
| Christmas Day | - December 25th |
| Rizal Day | - December 30th |

**Art. 9    PAID VACATION**

9.1    The COMPANY agrees to grant the seafarer covered by this agreement sixty(60) days vacation leave with pay (based on monthly wage) after completing 10 months of continuous satisfactory service.  However, in the event that a seafarer is repatriated due to illness or in consonance with the COMPANY's policy of personnel rotation and repatriation hereinafter provided before completion of the term of contract, they shall be entitled proportionately to the benefits mentioned herein based on length of service.  It is understood, however, that the vacation schedule shall not interfere with the vessel's operation and the UNION agrees that the time and place of repatriation shall be at the option of the COMPANY.  Request for repatriation shall be submitted to the Master at least 30 days prior to expiration of contract.

9.2    Both parties agree that the vacation leave benefit mentioned herein shall be cumulative and commutative at  the option of the seafarer, the equivalent thereof shall be paid to his allottee upon completion of 10 months service or extension of service if mutually agreed upon, payable in Manila in Philippine currency.  In the event such earned leave benefits are commuted, it shall be payable in Philippine currency to the seafarer or his assigned allotee at the rate of exchange as prescribed in Section 2, Art. 10 of this agreement.  In both cases, however, it is mutually agreed that payment of leave benefits shall be based on the permanent monthly salary as per Individual Employment Contract.

9.3    Both parties agree that in the event a seafarer is repatriated on account of illness or in consonance with the COMPANY's policy of personnel rotation on board vessel, the seafarer shall be paid the benefits provided for herein in proportion to the period of service rendered on board the vessel.  However, should the repatriation of the seafarer be for cause or should he resign prior to the completion of his term of contract, he shall forfeit his right  to the benefits mentioned herein.

**Exhibit D**
**Page 11 of 31**

Holland America Lines

Art. 10   SALARIES

10.1   Effective January 01, 2004, all positions covered by this Agreement shall be those as per attached Salary Scale. (See appendix A-1,A-2)

10.2   (a)That only twenty percent (20%) of the base wage (Column 1, App. A)  will be credited to his account  and the balance of eighty percent (80%) shall be payable to   the seafarer's assigned allottee in Philippine Currency at the rate of exchange prevailing as bank buying rate on the first day of the month where payment of such allotment shall become due.  Overtime compensation shall be payable on board.

(b)That the twenty percent (20%) of the base wage (Column 1, App. A) shall be paid onboard every pay period together with other earnings including overtime pay, extra labor wages.  A Master's Payment Order may also be issued by the Master upon request at any particular time but only for purposes of remitting the amount to the seafarer's allotee in the Philippines.

(c)The crew member agrees that in case US dollars are not available when payment of such wages shall be due, he can be paid in any other foreign currency available, in part or in full, subject to the provisions  of section B.  The Company further agrees that dollar remittance for salaries of crew shall be coursed through the Philippine National Bank or to any other bank authorized by the Central Bank of the Philippines.

BEVERAGE PERSONNNEL(APPENDIX A-2)

10.3.1.1   Beverage personnel shall have service money based on a 15% percent service charge from every sale  (beverages  and bottles sold). Bar attendants shall receive 14.4 % of the service charge and wine attendants    shall receive  9.7%.  The remaining percentage (0.6% and 5.3% respectively)  shall be placed in a service charge   pool which will be  further distributed to the other beverage personnel; Bar Supervisor, GPA Bars, and Bartenders.

10.3.2   Bartenders receive 14.4 % of individual sales as well as a percentage of the service charge pool based  on agreed onboard distribution.

10.3.3   For Bar Supervisors and GPA Bars, the beverage gratuities are based on a percentage of the service charge pool based on agreed onboard distribution.

10.3.4   The Company and the Union agree to implement 10.3.1; 10.3.2; 10.3.3 and make periodical assessments of effectivity of the above system.

10.3.5   Beverage personnel will receive an Annual Guarantee per position based on 12 months worked.

10.4   HOTEL PERSONNEL (APPENDIX A-2)

10.4.1   Hotel Personnel shall take part in a new gratuity program wherein each participating position  will be paid additional gratuities allocated by position based on agreed onboard distribution.

10.4.2   Hotel personnel will receive an Annual Guarantee per position based on 12 months worked.

Page 5

**Exhibit D**
**Page 12 of 31**

Holland America Lines

## Art. 11   OVERTIME PAY

11.1       In the event any seamen is engaged in work, including the normal routine duties of a vessel/s in excess of the working hours
           stipulated in Art. 7, they shall be paid overtime compensation in accordance with the hourly rates stipulated in Appendix "A" of
           this Agreement.

11.2.1    In case of existence of potential danger as determined solely by the Master and to maintain safety of the vessel, the
          seafarer, the passengers and/or cargo on the saving of lives or of other vessel/s or the training for using life boats or    fire
          equipment, the seafarer shall perform necessary work under any circumstances without overtime.  In so far as possible, all
          drills, training, etc. will be conducted during daytime.

11.3      Overtime compensation will not be paid for the following services:

          A)    All types of emergency work for the safety of the vessel, crew passenger and cargo
          B)    Turning and relieving of watches
          C)    Fire and boat drills
          D)    Inspection of quarters for cleanliness
          E)    Taking sights of officers
          F)    Preparation of payroll

## Art. 12   LONGEVITY PAY

12.1      For Hotel and Beverage personnel, the COMPANY and the UNION agree to pay the seafarer covered by this agreement
          longevity pay which is included in the new monthly wage shown in appendix A-2.

12.2      For non-Hotel and non-Beverage Personnel, the COMPANY  and the UNION  agree to pay the seamen covered by this
          agreement longevity pay based on the schedule in Appendix "C" which shall form an integral part of this Agreement.

## Art. 13   SUBSISTENCE

13.1      All subsistence stores of good commercial quality not less than the equivalent of  US$4.00 per day per man, shall be provided
          by the COMPANY.

13.2      Ship stores are to be loaded and stowed by vessel's seamen.

## Art. 14   EMBARKATION AND REPATRIATION OF SEAMEN

14.1      EMBARKATION:

14.1.1    For Hotel and Beverage Personnel, cost of airplane fares (economy) to port of embarkation, costs of meals and hotel
          charges, if applicable, shall be paid by the COMPANY according to the number of days required from the airport/seaport in
          Greater Manila to the port of embarkation.   Seamen's baggage shall be limited in weight to the normal allowed weight by the
          air carrier.

14.1.2    For non- Hotel and Beverage personnel, cost of airplane fares (economy) to port of embarkation, costs of meals and hotel
          charges, if applicable, shall be paid  by the COMPANY according to the number of days required from the airport/seaport in
          Greater Manila to the port of embarkation.  Seamen's baggage shall be limited in weight to the normal allowed weight by the
          air carrier

**Exhibit D**
**Page 13 of 31**

Holland America Lines

**14.2    DEBARKATION:**

The UNION hereby agrees to the COMPANY's policy of personnel rotation for purposes of expediting change-over of crew in order to maintain an even balance of qualified seamen on board whereby the seamen can be repatriated to Manila even before the expiration of the term of contract if vessel is calling at a port very near to Manila so as to minimize on cost of repatriation and replacement, and the repatriated seafarer under this policy shall only be paid wages up to the day the seafarer disembarked from the vessel and leave benefits in proportion to his length of service on board.  In the event a crewmember debarks from the vessel after completion of his contract, the COMPANY shall arrange for his repatriation and return to Manila but excess baggage, if any, shall be for the account of the seamen concerned.

**14.3**    In case a seafarer disembarks from a vessel due to injury or sickness sustained while on duty, and not attributable to his misconduct, and inexcusable negligence, fault etc., the aforesaid Paragraph 14.2 hereof shall apply in addition to medical expenses and other benefits provided for in Article 15 hereof; The Company/Master shall undertake to arrange for the immediate medical treatment including hospitalization in case of emergency of a seafarer at port or places outside Philippine waters.

**14.4    REPATRIATION:**

**14.4.1**    For Hotel and Beverage positions, the COMPANY and the UNION agree that should the term of contract of the seafarer expire when such seafarer is at sea or in any foreign port where repatriation is deemed difficult, they shall continue to perform their duties and obligations under the same terms and conditions of this Agreement with corresponding compensation until suitable replacement are made or until such that a new contract is signed if extension of service is mutually desired.  If repatriation is made other than at Philippine Ports, the COMPANY agrees to pay for the transportation from the port of  disembarkation to Manila provided that the Company has the option to select the port from where repatriation shall be made.

**14.4.2**    All other positions not included in the Hotel and Beverage Personnel, the COMPANY and the UNION agree that should the term of contract of the seafarer expire  when such seafarer is at sea or in any foreign port where repatriation is deemed difficult,  they shall continue to perform their duties and obligations under the same terms and conditions of this Agreement with   corresponding compensation until suitable   replacement are made or until such that a new contract is signed if extension of  service is mutually desired.  If repatriation is  made other than at Philippine  Ports, the COMPANY agrees to pay for the  transportation from the port of  disembarkation to Manila provided that the  Company has the option to select the port from  where repatriation shall be made.

**Art. 15    HOSPITALIZATION, MEDICAL AND DENTAL SERVICES**

**15.1**    The COMPANY agrees to grant all seamen covered by this agreement necessary hospitalization, medical and emergency dental services for illness and injuries arising out of and in the course of employment as provided for by law but which are not due to their refusal to obey lawful orders or heed previous warnings of their superiors or to immoral acts, vicious habits, or notorious negligence.

**15.2**    The COMPANY agrees that any crewmember covered by this agreement shall not lose right to his wages in the event he is incapacitated from work on account of illness or injury arising out of and in the course of employment and should the seafarer die or is permanently incapacitated from work due to such sickness or injury, to pay him compensation benefits in accordance with the provisions embodied in Book IV Title II EMPLOYEES COMPENSATION AND STATE INSURANCE FUND CHAPTER VI OF THE NEW LABOR CODE OF THE REPUBLIC OF THE PHILIPPINES as promulgated under Presidential Decree No. 442.  Provided, however, that should the seafarer or his heirs collect the said benefits directly from the Social Security System, and company shall be relieved of any responsibility or liability for the same.



**Exhibit D
Page 14 of 31**

Holland America Lines

15.3     The UNION agrees that if any such seafarer contract or suffer illness or injury through their own fault or due to their refusal to obey lawful orders or heed previous warnings of their superiors or to immoral acts, vicious habits, or notorious negligence, any expense advanced by the COMPANY due to such illness or injuries shall be considered as a loan deductible from the seafarer's salaries by the periodic deductions in amounts to be determined by the COMPANY. The UNION further agrees that if any such seafarer for any reason resigned or is discharged from the service for cause before the full amount of the loan is paid, the COMPANY has the right to withhold his accrued wages and if such wages are not sufficient to pay for the loan, the COMPANY may take legal steps as it may deem proper to collect the balance.

## Art. 16   MEDICAL AND SANITARY EQUIPMENT

16.1     The COMPANY shall provide medical and hygienic materials, ship's medical kit and Medical Aids Book (as recommended by ILO).

## Art. 17   SOCIAL SECURITY AND PHILIPPINE MEDICAL CARE

17.1     The COMPANY agrees to cover or enroll the seamen under the Philippine Social Security System and the Employee's Compensation Commission.

17.2     The COMPANY will also arrange to cover or enroll the seamen under the National Health Insurance Program by virtue of Republic Act 7875 of 1995.

## Art. 18   JOB SECURITY

18.1     Notwithstanding Appendix "B" hereto, promotion, demotion, suspension, and/or dismissal of the seafarer shall be left to absolute discretion of the Master, upon notification to the COMPANY who will notify the UNION. The Master shall, where possible and when its term do not conflict with the laws of the country of the vessel's registry, adhere to the guidelines set forth in Appendix "B" hereto concerning any and all disciplinary action taken on board the vessel.

18.2     In the event a seafarer is temporarily assigned to a higher rank to fill a vacancy, he shall be paid the salary of such temporary rank for the duration of the assignments. However, for calculating vacation, the permanent monthly wage salary shall be utilized. The seafarer shall be notified by the master that the promotion is of a temporary nature and the seafarer shall revert to his permanent rank when vacancy is filled.

18.3     Qualified seafarers shall be promoted to maximum extent possible subject to the Master's discretion.

## Art. 19   GRIEVANCE PROCEDURE

19.1     The parties to this agreement agree on the principle that all dispute between the UNION and the COMPANY can be and must be resolved through friendly negotiations; that the parties have the same interest in the continuity of work until all matters in dispute shall have been discussed and settled; that, an open conflict in any form is detrimental to the interest of the parties and that, therefore, every effort shall be exerted to avoid such conflicts.

19..2     The unlicensed personnel of each department covered by this agreement shall be exclusively represented by one union delegate appointed by the UNION on whom the COMPANY shall be entitled to rely to effect binding disposition of all grievances. Provided, however nothing herein shall be construed to deny to the seamen any of the grievance procedure set forth in this Art. 19.

**Exhibit D**
**Page 15 of 31**

Holland America Lines

19.3        A dispute or grievance arising in connection with the terms and provisions of this agreement or Individual Employment Contract shall be adjusted in accordance with the following procedure.

19.3.1      Any seafarer who feels that he has been unjustly treated shall authorize said grievance to be adjusted by the designated representative of the Unlicensed Department aboard the vessel in the following methods:

a)   Presentation of the complaint to his immediate superior
b)   Appeal to the head of the department in which the seafarer involved shall be employed
c)   Appeal directly to the Master

19.4        If the grievance cannot be resolved under the provision of Section 3, the decision of the Master shall govern at sea   and in foreign ports   and until   the vessel arrives at a port where the Master shall refer such dispute to either   the COMPANY or the UNION in order to resolve such dispute.   It is understood, however, if the dispute could not be resolved by the COMPANY or the UNION at such time then both parties shall avail of the grievance procedure as provided in Section 5 through 8 hereof.

19.5        In furtherance of the foregoing principle, there is hereby created a Grievance Committee to be composed of two Company Representatives to be designated by the COMPANY and two Labor Representatives designated by the UNION.

19.6        Any grievance , dispute, or misunderstanding properly raised by a seafarer covered by this agreement concerning any ruling, practice, wages or working conditions in the COMPANY or any breach of the Employment Contract, or any dispute arising from the meaning or the application of the provision of this agreement or a claim of violation thereof or any complaint that any such crewmembers may have against the COMPANY shall absent the resolution thereof under the  prior sections be brought to the attention of the Grievance Committee before either party takes any action, legal or  otherwise.

19.7.1      The Grievance Committee shall resolve any dispute within fifteen (15) days from and after the same is submitted to it for resolution and if the same cannot be settled by the Grievance Committee or if the Grievance Committee fails to act on the dispute within the 15-day period herein provided, the same shall be referred to a Voluntary Arbitration Committee or to an impartial arbitrator.

19.7.2      An "impartial arbitrator"  will be appointed by mutual choice and consent of the UNION and the COMPANY who shall hear  and decide the dispute or issue presented to him and his decision shall be final and unappealable.

19.7.3      The "impartial arbitrator" shall decide the dispute/issue within 30 days after parties have submitted their cases for resolution.

19.7.4      If by reason of the nature of the controversy/dispute/grievance, the parties may refer the case to Arbitration Committee, one to be designated by the UNION, one to be designated by the COMPANY and the third member who shall act as Chairman, shall be by mutual choice of the parties.  In the event of disagreement as the third member, the COMPANY and the UNION shall each submit a list of three(3) names of arbitrators preferably drawn from:

a)   Directors and/or Staff of the UP Law Center
b)   Registered Philippine Association Professional Arbitration (PAPA)
c)   Registered Arbitrators Association of the Philippines (AAP)

19.7.5      The selection shall be by drawing of lots, the names of these arbitrators shall be written in uniform size and colored paper, carefully rolled and placed in a container.  The person who shall pick the names of arbitrators shall be determined by the "Toss Coin Method" and the first name picked up shall be the third arbitrator.  In the event the third arbitrator shall be disqualified and/or refused to accept the arbitratorship, then the process is repeated until the third arbitrator is selected.

Page 9

**Exhibit D**
**Page 16 of 31**

Holland America Lines

19.7.6    The Arbitration Committee shall adopt such procedure as will enable the parties to the dispute, disagreement, or controversy to present fully but expeditiously their respective sides and the concurrence of two members of the Arbitration Committee shall be necessary to render a decision which shall be in writing and signed by at least two members of the Arbitration Committee.

19.7.7    The Arbitration Committee shall have no power to add to, subtract from, or modify any of the terms of this agreement or any agreement made supplementary hereto.   The decision of the Arbitration Committee shall be final, binding and unappealable upon the COMPANY, the UNION and the employee(s) concerned.

19.7.8    The Arbitration Committee is rendering a decision should be guided by existing agreement, the applicable laws, rules and regulations, the relevant jurisprudence and the evidence presented.

19.7.9    The Arbitration Committee shall endeavor to render its decision within thirty (30) days after the dispute, disagreement or controversy is submitted for decision.

19.7.10   The expenses of the arbitration shall be borned equally by the COMPANY and the UNION.

19.8     In any case where it is alleged that the "no strike" or "no lockout"  provisions of this agreement are being violated, the aggrieved party may demand settlement of the dispute by the Grievance Committee.


Art. 20    WAR BONUS

20.1     The COMPANY  agrees that during the period of this contract, should the vessel be traded in any area exclusively by the WAR RISKS TRADING WARRANTIES occurring the vessel, and subsequent amendment thereto the seafarer shall be paid War Bonus equivalent to 100 percent of their monthly salary for the duration of the seafarer's stay in the war zone area. Provided, however, that the said war bonus shall not be payable to the seafarer if the vessel's underwriters do not charge additional premium for the period when the vessel remains in the area excluded by the warranties, as determined by component authorities, provided that this fact is made known to and communicated to the crewmembers before entering into a war zone area, and provided further that a crewmember has the right to refuse to go to a "war zone" which right must be exercised at the port of call before proceeding to the war zone.


Art. 21    LIFE/ DISABILITY INSURANCE, WELFARE MUTUAL BENEFIT PLAN

21.1     WELFARE MUTUAL BENEFIT PLAN – It is the concern of the UNION and the COMPANY, thru the Welfare Mutual Benefit Plan, to enhance Filipino seafarer's well-being, feels that added protection to include legitimate spouses, as well as legitimate minor children- dependents, will contribute more to the attainment of such objective, in cases, where the member is unmarried, his father and/or mother shall be deemed beneficiaries.  While ordinary life insurance benefits only assured, it is the purpose and intention of this Welfare Mutual Benefit Plan to grant bigger coverage, protection and benefits to its bonafide members as follows:

21.2.1    LIFE INSURANCE – In case of death of the seafarer covered by this agreement, the COMPANY shall pay his beneficiary/ies the Philippine Currency equivalent to the amount of US$60,000.00 to his next-of-kin beneficiary at the exchange rate prevailing during the time of payment.

21.2.2    The Company shall likewise pay US$ 7,000.00 to each child under 21 years of age ( not to exceed 4 ) whom the deceased seafarer was supporting.

**Exhibit D**
**Page 17 of 31**

Holland America Lines

21.2.3    In view of time required in the processing of payment,   the UNION agrees to immediately pay to the designated beneficiary/ies the amount of:

| | | |
|---|---|---|
| a. | For Master/Chief Engineer | P250,000.00 |
| b. | For other Officers including Radio Operators & Master Electrician | P210,000.00 |
| c. | For Ratings | P170,000.00 |

it being understood that any such amount paid forms as an integral part of the whole death compensation above and that the shipowner shall pay the unpaid portion thereof to the beneficiary/ies after deducting the Union's payment.

21.2.4    DISABILITY INSURANCE – A seafarer who suffers an illness or injury while in the employment of the COMPANY, through no fault of his own, including accidents or illnesses occurring while traveling to or from the vessel at the request of the COMPANY or its agent, or as a result of a marine peril and whose ability to work is reduced as a result thereof, shall receive from the COMPANY, in addition to his vacation pay, a disability compensation calculated on the basis of the POEA's schedule of disability or impediment for injuries at a percentage recommended by the COMPANY designated Physician. The amount of US$60,000.00 shall be the basis in arriving at the amount payable by the COMPANY.

21.3.1    WMBP – While the covered member is no longer working aboard vessel by virtue of completion of contract and expiration of Collective Bargaining Agreement and naval/maritime risks and hazards cease and within the grace period of thirty (30) days as herein provided, and death or serious disabling physical injuries occurs, or sustain, the following benefits and schedules are granted:

| | |
|---|---|
| Loss of Life | P 20,000.00 |
| | |
| Partial permanent Disability: Loss of | |
| Two (2) limbs | P 5,000.00 |
| Two (2) hands or all fingers or (2) thumbs | P 5,000.00 |
| Both feet | P 5,000.00 |
| Both eyes (sight) | P 5,000.00 |
| Injuries (not total and permanent) which resulted I being permanently bed-ridden | P 5,000.00 |

21.3.2    After two (2) years of continued contributions by the shipowners or of the member concerned and while covered member is still working aboard vessel and during the lifetime of the Collective Bargaining Agreement between the Associated Marine Officer's and Seaman's Union of the Philippines (AMOSUP) and the shipping firm, should death occur to the legitimate spouse, the amount of ten thousand (P10,000.00) pesos shall be granted as death benefit to the surviving spouse-member.

21.3.3    After three (3) years of continued contribution by the shipowners and the member concerned, and while the covered member is working aboard vessel with an existing collective bargaining agreement with AMOSUP and the shipping firm, should death occur to any of the legitimate minor child who is unmarried, the amount of four thousand (P4,000.00) pesos per child's death shall be granted.

21.3.4    Loss of life of the member's spouse and/or any child not qualified under the foregoing paragraphs 21.3.2 and 21.3.3 shall be extended financial assistance in the amount of one thousand (P1,000.00) pesos only.

21.3.5    Funeral allowance for the wife and/or children not to exceed four (4), not qualified under the foregoing paragraphs 21.3.2 and 21.3.4, shall be extended financial assistance in the amount of one thousand (P1,000.00) pesos only.

21.3.6    Funeral allowance will be extended to the member's legitimate spouse and children not qualified under coverage 21.3.1 and 21.3.2 of this plan only while the member is still working aboard any vessel covered by a collective bargaining agreement of AMOSUP and a grace period of three (3) months not less than ninety (90) days which shall also be considered as the

Holland America Lines

maximum stand-by period of the member, to be allowed for the enjoyment of the funeral allowance, provided, however, that the member is a bonafide member and in good standing with the UNION.

21.3.7   Funeral services to all bonafide members will be rendered by Prudential Life Plan and/or Pacific Memorial Plan Inc.

21.3.8   That conditions of the certificate of membership under the welfare mutual benefit plan shall be furnisghed all covered bonafide members together with such pertinent rules and regulations for the implementation of the benefits under the plan.

21.3.9   OLD AGE FINANCIAL ASSISTANCE

The UNION recognizes the fact that by reason of the rigors of the sealaring profession, advanced age serves as a deterrent to the efficiency and re-employment of its loyal members. To help secure said members when the eventuality comes in and in addition to the benefits they may have enjoyed, any deserving member under this collective agreement who has reached sixty (60) years, unable to work as duly certified by a UNION's physician as physically and medically unfit for any kind of work and with no apparent source of living or means of livelihood but being a bonafide member who has served a minimum of five (5) years on board vessel/s covered by the UNION's Collective Bargaining Agreement, shall receive an old age financial assistance, subject to the recommendation of the Special Welfare Mutual Benefit Plan, Committee and approved by the Union President, as follows:

a)   Two Thousand Pesos (P2,000.00), Philippine Currency, for the first year of his service; and

b)   Five Hundred Pesos (P500.00), Philippine Currency, for every year of service thereafter, payable in lumpsum but shall not exceed the total number of years he had actually worked on board vessel/s as such member under the UNION's Collective Bargaining Agreement.

Art. 22   THE FAMILY MEDICAL AND DENTAL PLAN

22.1   Professional medical services shall be extended to bona fide members, including their duly registered legitimate spouses, minor children who are unmarried and not more than 18 years of age and not exceeding four (4) in number, which services shall include free medicine as may be prescribed, including X-ray, E.C.G., laboratory examinations and/or confinement in the Union's hospital on doctor's recommendation in proper cases all free of charge. (see Appendix "D")

22.1.2   Professional dental services shall likewise be extended to bona fide members, including their duly registered legitimate spouse and minor children unmarried and not over 18 years of age, not exceeding four (4) in number, such services as extraction, filing, x-ray, others except denture, full or partial, or gold/silver crowning, and such service shall be performed by duly licensed dentist free of charge, including the prescribed medicine as may be available in stock.

22.2   The COMPANY agrees to a monthly contribution of US9 for each crewmember on board and on paid vacation for the operation and maintenance of the Family Medical and Dental Plan in direct participation with the UNION for the members and immediate dependents.

22.3   The COMPANY agrees to a contribution of US$ 15 for each seafarer carried on board per term of service, to the Philippine Overseas Employment Administration (POEA) Seafarer's Welfare Fund.

Art. 23   SAILOR'S HOME

23.1   The UNION recognizing the difficulty and inconvenience of obtaining reasonable board and lodging imposed on majority of the seafarers who reside in the distant islands of the archipelago, prior to their embarkation on board their assigned vessels, and likewise, following their repatriation after completion contract, and cognizant of the concentration of all business functions,

Holland America Lines

operation and administration in the Manila Metropolitan area, and fully aware of their responsibility to unload the burden and restriction these circumstances imposed upon the seafarers, to which the COMPANY agrees appropriate measures have been established and steps taken to meet the need of the seafarers.

23.2     A more flexible and comfortable `HOME' is being provided through the AMOSUP SAILOR'S HOME at Cabildo cor. Sta. Potenciana Streets, Intramuros, Manila. A three storey building, fully airconditioned with three hundred thirty (330) beds for ratings and officers complete with bed sheets and cushions, toilet, bath and laundry facilities and spacious lounge. Seafarers are served continental breakfast for free within the duration of their stay at the Sailor's Home. For a fully and continued support and implementation of the foregoing benefits, the provisions of the foregoing Article 24.5 hereof shall apply.

## Art. 24    THE FAMILY CARE PLAN

24.1     The UNION fully realizes the great obligations and responsibilities imposed by present standard of living to which situation the COMPANY concurs. Towards this end, appropriate steps have been taken and prepared to meet the risks and/or exigencies of time to accord any member such timely assistance when needed most through the Union's Family Care Plan, the implementation thereof and pertinent rules and regulations relative to the same shall be furnished all concerned.

24.2     That the foregoing plans meets the approval of the COMPANY who hereby confirms and affirms that it will undertake to support and implement the foregoing plans in accordance with the individual Employment Contract and this Agreement.

24.3     That in case of death or total and permanent disability of the sealarer during the term of his service aboard ship and/or travel to and from the said ship, such relief or compensation as maybe considered either under the seafarer's Individual Employment Contract and its addendum, if any, or the foregoing plans, or under the POEA Rules and Regulations or this Collective Bargaining Agreement, whichever is applicable and recovery under any one scheme shall be a bar to recovery under any of the other schemes.

24.4     The benefits referred to in the preceding paragraph shall be over and above those other benefits provided for under Article VI of this Agreement.

23.3     The Company, in manifestation of its commitment to support the aforementioned benefits, agrees to give a monthly premium contribution in such amount/s as per actuarial computation due for each seafarer on board ship and on paid vacation leave for the operation and maintenance of the afore-mentioned PLANS.

## Art. 25    OTHER FACILITIES

25.1     The COMPANY agrees to provide suitable Western Style living accommodation for each seamen covered by this contract. Also, the COMPANY agrees to provide regular supply of suitable linen, blankets, towels, soaps, which include mechanic soap in reasonable amounts.

25.2     The COMPANY shall provide foul weather and protective wok and safety equipment, such as helmets, goggles, working gloves, boiler suits, safety belts, but which shall be considered ship's property and accounted for by the crew on disembarkation, normal wear and tear excluded. However, prior to departure, the COMPANY agrees to provide working clothing to the crew, two-coveralls each for deck and engine departments, and catering department crew with three sets each of uniform which shall be for the account fo the COMPANY.

25.3     The sealarer shall have the privilege of purchasing any articles from the vessel's slop chest except alcoholic drinks according to the prevailing rules for such sale as set by the Master. Such items to be sold to the sealarer at slop chest price.





Page 13

Holland America Lines

**Art. 26   TRANSFER OF SEAMEN**

26.1     The COMPANY shall have the option at their discretion of transferring seamen from one vessel.  Provided, however, that seafarer transferred to another vessel shall not suffer demotion in rank or position nor in pay and that there will not be any interruption of time for calculation of leave benefits nor increase in the term of service.

**Art. 27   UNION DUES**

27.1     During the lifetime of this Agreement, the COMPANY agrees to deduct from the wages (column I of Appendix A) of each member of the UNION and remit to the UNION, membership dues and assessments levied in accordance with the Constitution and By- Laws of the UNION upon receipt of the corresponding written authorization from the UNION.

**Art. 28   SAFETY PROGRAM**

28.1     The COMPANY has  a marine personnel safety program in effect on all vessel/s.  Participation in this program is mandatory. Any seafarer  who violates COMPANY'S safety program or regulations shall be subject to disciplinary action .

**Art. 29   STRIKES AND LOCKOUTS**

29.1     The COMPANY and the UNION agree that during the term of this Agreement and for any period of negotiation for its renewal, and during any period of arbitration as provided for, there shall be no strikes, sitdowns or other stoppage of work.

29.2     The COMPANY and the UNION agree that during the entire term of this agreement and during the period of negotiation for the renewal, the COMPANY, shall not be prohibited from effecting the orderly termination of the employment of any personnel on any vessel/s nor should the COMPANY be prohibited from discharging any member of the personnel for just cause.

**Art. 30   SHIPMENT OF REMAINS**

30.1     If is agreed that the seafarer's remains and personal effects, in case of death shall be shipped to Manila at COMPANY's expense or, if not possible under the circumstances, the proper disposition thereof, upon previous arrangement with seafarer's next-of-kin.

**Art. 31   AUTHORITY OF THE MASTER**

31.1     It is understood and agreed that nothing contained in this Agreement is intended to or shall be construed as to restrict in any way the authority of the Master or prevent the obedience of any member of the crew to any lawful order of any superior officer.

**Art. 32   JURISDICTION**

32.1     The contracting parties agree that all disputes arising out of this Agreement shall be settled in accordance with the procedure set forth in Article 19 hereof and if the dispute cannot be settled under the provisions of this Agreement, the  same shall  be brought for judicial resolution at Manila, Philippines.

Page 14

**Exhibit D**
**Page 21 of 31**

Holland America Lines

**Art. 33    DECLARATION OF NULLITY**

33.1        It is agreed that the decision of a court declaring a word, phrase, sentence, paragraph, of this Agreement illegal or void shall in no way affect the efficacy and validity of the remaining provisions of this Agreement.

**Art. 34    FAMILY PLANNING**

34.1        In compliance with its obligations under the Labor Code, the COMPANY shall provide free family planning counseling for its employees.

**Art. 35    LABOR-MANAGEMENT COOPERATIVE SCHEMES**

35.1 Towards the realization and implementation of the policy of the state and the goals of the New Labor  Code, parties hereto are agreed to cause about the survey, study and subsequent implementation of such labor-management cooperative schemes for increasing productivity, sharing of the benefits resulting therefrom, workers education, reduction of monotony at work, and recreational activities and job enrichment, as prescribed in Section 2 RuleIX of Book V of the implementing Rules of P.D. 442, as amended.

**Art. 36    TABLE OF OFFENSES AND MAXIMUM PENALTIES**

36.1        The parties in this Agreement agree to achieve efficiency, loyalty and discipline on board the vessel, to strictly adhere to the TABLE OF OFFENSES AND MAXIMUM PENALTIES as hereto attached and marked as APPENDIX "B" forming an integral part of the contract.

**Art. 37    HOLLAND AMERICA LINE/WINDSTAR CRUISE EMPLOYEE PENSION PLAN**

37.1        The pension plan for all personnel will be terminated going forward.  For current participants' future years of service will count for vesting and eligibility purposes only.  Payouts will not be made until retirement or other qualifying event.

IN WITNESS WHEREOF, the contracting parties hereto have caused this AGREEMENT to be executed by their respective duly authorized officers on the date and place herein before first written.

UNITED PHILIPPINE LINES, INC.

ASSOCIATED MARINE OFFICERS'
AND SEAMEN'S UNION OF THE
PHILIPPINES

By:

MR. FERNANDO V. LISING
President

By:

CAPT. GREGORIO S. OCA
President

SIGNED IN THE PRESENCE OF:

ATTY. JOSE ADONIS B. CRUZ

**Exhibit D**
**Page 22 of 31**

Holland America Lines

APPENDIX "A-1" - HOLLAND AMERICA LINE INC. - FILIPINO SALARY SCALE
Effective 01 January 2004 (2% increase)

| | POSITION | 2004 BASE | LIVING ALLOW | FIXED OVERTIME | HOURLY RATE | GIP | CONTR. RETURN | VACATION | 2004 TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Elec. Tech | 762.97 | 31.63 | 228.89 | 4.77 | | 127.16 | 127.16 | 1,277.81 |
| 2 | Reeler Tech | 762.97 | 31.63 | 228.89 | 4.77 | | 127.16 | 127.16 | 1,277.81 |
| 3 | Motorman | 762.97 | 31.63 | 228.89 | 4.77 | | 127.16 | 127.16 | 1,277.81 |
| 4 | Sr. Audio Visual Tech | 762.97 | 31.63 | 228.89 | 4.77 | | 127.16 | 127.16 | 1,277.81 |
| 5 | Demi Chef de Partie/Trav.Mach | 799.55 | 31.63 | 239.87 | 5.00 | | 133.26 | 133.26 | 1,337.57 |
| 6 | Sr. Machinist/Uph/Carp/Tailor/Locksmi | 663.23 | 31.63 | 198.97 | 4.15 | | 110.54 | 110.54 | 1,114.91 |
| 7 | Mach/Carp/Uph/Plumber/ | 566.97 | 31.63 | 170.09 | 3.55 | | 94.50 | 94.50 | 957.69 |
| | Deck Mach/ ( 1st)Tilesetter(1)/Locksmi | 566.97 | 31.63 | 170.09 | 3.55 | | 94.50 | 94.50 | 957.69 |
| 8 | Audio Visual Tech | 494.18 | 31.63 | 148.25 | 3.09 | | 82.36 | 82.36 | 838.78 |
| 9 | Interior Painter | 489.39 | 31.63 | 146.82 | 3.06 | | 81.57 | 81.57 | 830.98 |
| 10 | Welder/Machinist | 503.96 | 31.63 | 151.19 | 3.15 | | 83.99 | 83.99 | 854.76 |
| 11 | Carpenter/Upholsterer | 494.23 | 31.63 | 148.27 | 3.09 | | 82.37 | 82.37 | 838.87 |
| 12 | Cabinet Maker | 494.23 | 31.63 | 148.27 | 3.09 | | 82.37 | 82.37 | 838.87 |
| 13 | Plumber | 499.07 | 31.63 | 149.72 | 3.12 | | 83.18 | 83.18 | 846.78 |
| 14 | Pump mechanic | 489.39 | 31.63 | 146.82 | 3.06 | | 81.57 | 81.57 | 830.98 |
| 15 | Tilesetter | 489.39 | 31.63 | 146.82 | 3.06 | | 81.57 | 81.57 | 830.98 |
| 16 | Locksmith | 503.96 | 31.63 | 151.19 | 3.15 | | 83.99 | 83.99 | 854.76 |
| 17 | Foreman SA | 494.23 | 31.63 | 148.27 | 3.09 | | 82.37 | 82.37 | 838.87 |
| 19 | Cook/Butcher Trainee | 376.50 | 17.25 | 112.95 | 2.36 | | 62.75 | 62.75 | 632.20 |
| 20 | Baker/Pastry Trainee | 376.50 | 17.25 | 112.95 | 2.36 | | 62.75 | 62.75 | 632.20 |
| 21 | Storekeeper | 715.46 | 31.63 | 214.64 | 4.48 | | 119.24 | 119.24 | 1,200.21 |
| 22 | Special Service Technician | 674.49 | 31.63 | 202.35 | 4.22 | | 112.42 | 112.42 | 1,133.31 |
| 23 | Security Guard | 593.71 | 31.63 | 178.11 | 3.75 | | 98.95 | 97.60 | 1,023.61 |
| 1 | Asst. Cook | 527.84 | 31.63 | 158.35 | 3.30 | | 87.97 | 87.97 | 893.76 |
| 2 | Asst. Butcher | 494.23 | 31.63 | 148.27 | 3.09 | | 82.37 | 82.37 | 838.87 |
| 3 | Asst. Pastry | 494.23 | 31.63 | 148.27 | 3.09 | | 82.37 | 82.37 | 838.87 |
| 4 | Asst. Baker | 494.23 | 31.63 | 148.27 | 3.09 | | 82.37 | 82.37 | 838.87 |
| 5 | Tailor | 494.23 | 31.63 | 148.27 | 3.09 | | 82.37 | 82.37 | 838.87 |
| 6 | Bar Supervisor | 371.73 | 17.25 | 111.52 | 2.33 | 360.00 | 61.96 | 61.96 | 984.42 |
| 7 | Front Desk Attendant | 523.73 | 31.63 | 157.12 | 3.28 | | 87.29 | 87.29 | 887.06 |
| 8 | GPA Sanitation | 357.26 | 17.25 | 107.18 | 2.23 | | 59.54 | 59.54 | 600.77 |
| 9 | GPA Pantry/GPA SA/GPA Bars | 296.79 | 17.25 | 89.04 | 1.86 | | 49.47 | 49.47 | 502.02 |
| 10 | BLO Steward/Waitress | 171.36 | 17.25 | 51.41 | 1.07 | 180.00 | 28.56 | 28.56 | 477.14 |
| 11 | GPA Deckboy | 155.67 | 17.25 | 46.70 | 0.97 | 90.00 | 25.95 | 25.95 | 361.52 |
| 12 | Butcher/Baker | 525.30 | 31.63 | 157.59 | 3.29 | | 87.55 | 87.55 | 889.62 |
| 13 | Printer | 663.23 | 31.63 | 198.97 | 4.15 | | 110.54 | 110.54 | 1,114.91 |
| 14 | Barman | 236.43 | 17.25 | 70.93 | 1.48 | 270.00 | 39.41 | 39.41 | 673.43 |

**Exhibit D**
**Page 23 of 31**

Holland America Lines
2 0 JUL 2004

### APPENDIX A-2 - HOLLAND AMERICA LINES INC.
### FILIPINO SALARY SCALE EFFECTIVE MAY 1, 2004

| POSITION | I | II | III | IV | V | VI in excess of 77hr/wk |
|---|---|---|---|---|---|---|
| **HOTEL** | | | | | | |
| Front Desk Attendant | 724 | 905.00 | 62.08 | 967.08 | 11,605.00 | 4.35 |
| Asst. Cook | 458.4 | 573.00 | 383.67 | 956.67 | 11,480.00 | 2.75 |
| Asst. Cook Odyssey | 458.4 | 573.00 | 385.67 | 958.67 | 11,504.00 | 2.75 |
| Asst. Butcher | 458.4 | 573.00 | 386.92 | 959.92 | 11,519.00 | 2.75 |
| Asst. Pastry Cook | 458.4 | 573.00 | 347.50 | 920.50 | 11,046.00 | 2.75 |
| Asst. Pastry Cook Ody | 458.4 | 573.00 | 331.08 | 904.08 | 10,849.00 | 2.75 |
| Asst. Baker | 458.4 | 573.00 | 379.00 | 952.00 | 11,424.00 | 2.75 |
| Apprentice Cook | 458.4 | 573.00 | 370.92 | 943.92 | 11,327.00 | 2.75 |
| GPA Pantry | 293.6 | 367.00 | 213.33 | 580.33 | 6,964.00 | 1.76 |
| GPA Foreman Gen.Svc. | 924 | 755.00 | 243.00 | 998.00 | 11,976.00 | 5.55 |
| GPA Gen.Svc. | 353.6 | 442.00 | 131.75 | 573.75 | 6,885.00 | 2.13 |
| GPA Gen.Svc.Odyssey | 353.6 | 442.00 | 132.92 | 574.92 | 6,899.00 | 2.13 |
| Personnel Cook | 908 | 735.00 | 224.00 | 959.00 | 11,508.00 | 5.46 |
| Printer | 1064 | 930.00 | 258.83 | 1,188.83 | 14,266.00 | 6.39 |
| GPA Sanitation | 476.8 | 596.00 | 74.75 | 670.75 | 8,049.00 | 2.87 |
| Tailor Sr. | 1137.6 | 1,022.00 | 269.25 | 1,291.25 | 15,495.00 | 6.84 |
| Tailor | 856 | 670.00 | 239.75 | 909.75 | 10,917.00 | 5.14 |
| | | | | | | |
| **BEVERAGE** | | | | | | |
| Wine Attendant | 400 | 140.00 | 1,231.75 | 1,371.75 | 16,461.00 | 3.61 |
| BLD Male | 400 | 140.00 | 1,028.25 | 1,168.25 | 14,019.00 | 3.61 |
| BLD Female | 400 | 140.00 | 1,027.75 | 1,167.75 | 14,013.00 | 3.61 |
| Bartender | 492 | 615.00 | 567.83 | 1,182.83 | 14,194.00 | 2.96 |
| Bar Supervisor | 796 | 995.00 | 308.58 | 1,303.58 | 15,643.00 | 4.78 |
| GPA Bar | 488 | 510.00 | 81.50 | 591.50 | 7,098.00 | 2.93 |

NOTES:
I. Basis for allotment, sickwage, and Hourly Overtime
II. Monthly wage (inclusive of living allowances, overtime pay and bonuses)
III. Lumpsum
IV. Yearly Guarantee/12 (inclusive of vacation and tipping element)
V. Yearly Guarantee Pay
VI. Hourly O.T. (in excess of 77 hrs/week)

Page 17



**Exhibit D**
**Page 24 of 31**

Holland America Lines

Appendix "B"

## TABLE OF OFFENSES AND MAXIMUM PENALTIES

| | |
|---|---|
| 1. Smuggling or violation of any customs rules and regulation of the Philippines and foreign ports | Dismissal and to pay cost |
| A) Smuggling any taxable items | Dismissal and to pay cost |
| B) Possession of narcotics or other contraband | Dismissal and to pay cost |
| C) Gun-running or possession of explosive and the like | Dismissal and to pay cost |
| D) Abetting or conniving with others to commit smuggling. | Dismissal and to pay cost |
| E) Misdeclaration of or failing to declare articles leading to its seizure and fine to vessel | Dismissal and to pay cost |
| F) Misdeclaration of or failing to declare articles leading to seizure but vessel not implicated | 1st Offense - Reprimand & Warning<br>2nd Offense - Dismissal |
| G) Possession of pornographic materials leading its seizure and fine to vessel | 1st Offense - Reprimand & Warning<br>2nd offense- Dismissal |
| H) Any other minor violation which will not implicate the vessel | at Master's discretion |
| 2. DESERTION: | |
| A) Deserting or attempting to desert | Dismissal |
| B) Advising another to desert | Dismissal |
| C) Assisting or persuading another to desert | Dismissal |
| 3. ABSENCE WITHOUT LEAVE: | |
| A) Abandoning post of duty without being properly relieved | Dismissal |
| B) Leaving the vessel without permission from responsible officers during working hours | 1st Offense - Reprimand & Warning<br>2nd offense- Dismissal |
| C) Entrusting to others assigned duties without authority of the department head | at Master's discretion |
| D) Leaving the vessel without permission after working hours | at Master's discretion |
| 4. Commission of a felony punishable by Philippine or foreign laws | at Master's discretion |
| 5. Drug addiction | Dismissal |
| 6. Sleeping on post while on duty | Dismissal |
| 7. Insubordination. | |
| A) Any acts of disobedience to lawful orders of a superior officer | Dismissal |
| B) Assault or attempting to assault a superior officer | Dismissal |
| C) Insulting a superior officer by words or deeds | Dismissal |
| D) Inciting another to commit insubordination | Dismissal |
| 8. Molesting passengers | Dismissal |

Page 18

Holland America Lines

9. Drunkenness:

   A)  Drunk while on duty — Dismissal
   B)  Creating trouble on board ship due to intoxication — 1st offense- Reprimand & warning
                                  2nd offense- Dismissal
   C)  Failure to perform assigned jobs due to intoxication — 1st offense- Reprimand & warning
                                  2nd offense- Dismissal

10. Creating trouble outside the vessel's premises — 1st offense- Reprimand & warning
                                  2nd offense- Dismissal

11. For being left behind by vessel

                                  Dismissal and to pay cost

12. Gambling:

   A)  Which resulted in fighting of any incident as to upset the harmonious relationship on
        board the vessel — Dismissal
   B)  Any other form of gambling which is not purely recreational — at Master's discretion

13. Violation of COMPANY Policies and Regulations:

   A)  Pilferage — Dismissal
   B)  Unauthorized disposal of COMPANY or vessel's properties for personal gain — Dismissal and to pay cost
   C)  Any acts of dishonesty without intention to defraud the COMPANY — Dismissal and to pay cost

   D)  For gross negligence and failure to observe proper stowage and cargo handling
        procedures resulting in delay of vessel and/or damages to cargoes — 1st Offense - Reprimand & Warning
                                  2nd Offense - Dismissal
   F)  For failure to observe and comply with regulations and non-baggage shipments
        and acceptance of parcels on board — at Master's discretion
   G)  For failure to observe regulations on expiration of shore liberty — 1st Offense - Reprimand & Warning
                                    2nd Offense - Dismissal
   H)  For being left behind by vessel in foreign port without justifiable reason — Dismissal and to pay cost
   I)  For disorderly conduct and/or disrespect towards passengers — Dismissal
   J)  For immorality so as to cast aspersion on the good name of the vessel
        and COMPANY — Dismissal

   K)  For inflicting harm or injury to others — Dismissal & to pay cost

14. Incompetence and inefficiency — Dismissal

15. Any form of activity which tends to create discontent or dissension among
        the crewmembers — Dismissal

16. For inciting mutiny or any activity which will hamper the efficient opertion
        of the vessel — Dismissal

Holland America Lines

| | |
|---|---|
| 17. Any activity which will tend to destroy the harmonious relationship of the COMPANY and the UNION | Dismissal |
| 18. A)  For grave abuse or authority resulting in harm or injury to subordinate<br>   B)  Any other cases of abuse of authority | 1st Offense - Reprimand & Warning<br>2nd offense- Dismissal<br>at Master's discretion |
| 19. For gross misbehavior prejudicial to good order and discipline | 1st Offense - Reprimand & Warning<br>2nd Offense - Dismissal |
| 20. Causing through neglect damage loss, spoilage, or deterioration of COMPANY or vessel's stocks and property<br>   at Master's discretion | |
| 21. Connivance with stowaways. | Dismissal |
| 22. For wilfully making false statement reports or certification for personal gain or with intent to mislead or defraud the COMPANY | Dismissal |
| 23. Any other minor case as to cast aspersion on the good name of the COMPANY and vessel. | at Master's discretion |

Page 20

APPENDIX "C"

MONTHLY LONGEVITY BONUS

SECTION 1:  To achieve loyalty and encourage long and satisfactory service of the seamen, the COMPANY agrees to grant monthly longevity bonus as follows:

FOR OFFICERS:

| | |
|---|---|
| After having served COMPANY for two (2) continuous and satisfactory years of service | US$20.00 |
| After having served COMPANY for three (3) continuous and satisfactory years of service | 30.00 |
| After having served COMPANY for four (4) continuous and satisfactory years of service | 40.00 |
| After having served COMPANY for five (5) continuous and satisfactory years of service | 50.00 |

FOR RATINGS:

| | |
|---|---|
| After having served COMPANY for two (2) continuous and satisfactory years of service | US$15.00 |
| After having served COMPANY for three (3) continuous  and satisfactory years of service | 20.00 |
| After having served COMPANY for four (4) continuous and satisfactory years of service | 25.00 |
| After having served COMPANY for five (5) continuous and satisfactory years of service | 30.00 |

SECTION 2:  Service shall be deemed uninterrupted when a seaman is on paid vacation, or awaiting reassignment after his paid vacation, or is on leave due to medical reason, or when interruption is not attributable to the seamen's fault or own-making.

SECTION 3:  The monthly longevity bonus is separate and distinct from the basic monthly salary and therefore shall not be included for purposes of overtime computation.

SECTION 4:  In the event a seaman remains out of the employment of COMPANY'S service for a period of six (6) months or longer, he shall lose all prior creditable service.  The effective date of change in the longevity bonus rate due a seaman shall be the first of the month in which the seaman's service anniversary occurs.

SECTION 5:  Standby period shall likewise not be included for purposes of computing length of service to entitle seaman to a monthly longevity bonus.

**Exhibit D**
**Page 28 of 31**

APPENDIX "D"

Free translation of the text of the Article on fines as contained in the Netherlands commercial code. The Captain can impose a fine on the seafarer in case of:

Absence without leave

Returning late from shore leave

Work Refusal

Incompetency

Inefficiency

Misbehavior/negligence

Disorderly conduct

to a maximum amount of the equivalent of 10 days wages. Fines may be imposed conditionally and only recovered after the seafarer concerned has committed another offense for which a fine has been imposed.

If the seafarer is dismissed for cause, he cannot at the same time be fined for the same offense. The destination of the fines has to be mentioned in the working agreement. The fines may neither benefit the shipowner nor the captain. Before imposing a fine, the captain is obliged to hear the seafarer concerned and witnesses, in the presence - if feasible, of at least two seafarers of equal or higher rank. The report on this hearing should be signed by all present. Refusal to sign shall be recorded on the report.

No fine can imposed earlier than 12 hours and not later than 1 week after the offense took place, unless extraordinary circumstances make it necessary to deviate from the rule. Each fine has to be entered in the register of fines kept on board, stating the reason why and the time when the fine was imposed. Each entry in the register of fines has to be signed by the captain. A fine not entered in the register of fines is considered to be not imposed.



APPENDIX "E"

## CLARIFICATORY STATEMENT ON DEATH, DISABILITY, RETIREMENT
## AND OTHER RELATED BENEFITS

AMOSUP is a union of overseas Filipino Marine Officers and Seafarers.

The terms and conditions of employment of its members are clearly defined in their individual employment contracts and in the applicable Collective Bargaining Agreement.

The benefits provided in the collective bargaining agreement such as Death Benefit, Disability Compensation, Retirement and other related benefits are the exclusive liability of the company. AMOSUP is not an employer of the officers or seafarers and is, therefore, not liable in any manner to pay said benefits.

In the case of Death Benefit, AMOSUP agreed to advance₱ 250,000.00 (for Master/Chief Engineer),₱ 210,000.00 (for Petty Officers) and₱ 170,000.00 (for ratings) on the condition that the Company shall first remit the corresponding premium to AMOSUP for insurance coverage of the officers and ratings and that the applicable amount shall form as a part of the total death compensation under the CBA. In short, if the company fails to remit the corresponding insurance premium, it shall also pay the particular amount supposed to be advanced by AMOSUP to the beneficiary under the CBA.

The purpose of AMOSUP in securing an arrangement in the CBA whereby it can advance the above portions of the Death Benefit, is to immediately provide the heirs with the finances they need in view of the time required in the processing and settlement of death benefits.

For the guidance of all officers, ratings, beneficiaries and employers concerned, this clarificatory statement is hereby appended as an integral part of the collective bargaining agreement.

Page 23

APPENDIX "F"

LIST OF VESSELS COVERED BY THIS AGREEMENT

1.      NETHERLANDS FLAG AMSTERDAM

2.      NETHERLANDS FLAG MAASDAM

3.      NETHERLANDS FLAG NOORDAM

4.      NETHERLANDS FLAG OOSTERDAM

5.      BAHAMAS FLAG PRINSENDAM

6.      NETEHRLANDS FLAG ROTTERDAM VI

7.      NETHERLANDS FLAG RYNDAM

8.      NETHERLANDS FLAG STATENDAM

9.      BAHAMAS FLAG VEENDAM

10.     NETHERLANDS FLAG VOLENDAM

11.     DUTCH FLAG WES'ERDAM

12      NETHERLANDS FLAG ZAANDAM

13      BAHAMAS FLAG ZUIDERDAM





Page 24