UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROMEO BALEN, individually and on behalf of
all others similarly situated,

Plaintiff,

v.

HOLLAND AMERICA LINE, INC.,

Defendant.

CASE NO. C07-645RSM

ORDER GRANTING MOTION TO
COMPEL ARBITRATION

This matter is now before the Court for consideration of defendant's motion to compel arbitration and dismiss this complaint.  Dkt. # 10.  Plaintiff has opposed the motion.  The court heard oral argument on November 1, 2007, and has fully considered the memoranda, and exhibits, and relevant law. [1] The Court has also considered the legislative history materials submitted by plaintiff post-hearing.  Dkt. # 30.[2] For the reasons set forth below, defendant's motion to compel arbitration shall be granted.

FACTUAL BACKGROUND

Plaintiff Romeo Balen filed this class action asking for relief under the Seaman's Wage Act, 46 U.S.C. § 10313, on behalf of himself and all similarly situated Filipino employees of defendant Holland America Lines (HAL).  He contends that HAL, "in contravention of its employment agreement and [the] Seaman's Wage Act, wrongfully compelled the Filipino seafarers to reimburse HAL for [their]

---

[1] Plaintiff's motion for leave to file a supplemental declaration (Dkt. # 27) was denied as untimely at the hearing.  This declaration has not been considered.

[2] Defendant by surreply has moved to strike the notice filed with the legislative history materials, particularly the footnote.  Dkt. # 31.  The footnote simply repeats arguments already made by plaintiff at the hearing.  The Court declines to strike the footnote.

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 1

transportation expenses out of the seafarers' wages." Complaint, p. 1.   Defendant has moved to dismiss the complaint and compel arbitration pursuant to an arbitration clause in plaintiff's contract of employment.

Certain facts are not in dispute.  Plaintiff, a citizen of the Philippines, was hired by HAL in the Philippines to work aboard one of defendant's cruise ships.  He signed his employment contract in the Philippines on September 19, 2005.   On September 30, 2005, after attending a presentation regarding HAL's Gratuity and Beverage Plan, he signed an acknowledgment agreeing to the terms of that plan.  The Gratuity and Beverage Plan modified the existing Collective Bargaining Agreement ("CBA") between HAL and the Filipino seamen's union, Associated Marine Officer and Seamen's Union of the Philippines ("AMOSUP"), so that seamen would reimburse HAL for deployment costs (hotel, airfare, and so forth)  from gratuities collected from the cruise ship passengers.   It is this modification to the CBA that underlies plaintiff's complaint here.

The Philippine government closely regulates the hiring and employment conditions of Filipino seamen by foreign corporations through the Philippine Overseas Employment Administration ("POEA"). The POEA approves and administers standard employment contracts for the Filipino seamen.  The approved employment contracts incorporate by reference the Standard Terms and Conditions Governing the Employment of Filipino Seafarers on Board Ocean Going Vessels ("Standard Terms").  Plaintiff signed a copy of the Standard Terms as well as his employment contract.

Two specific sections of the Standard Terms are at issue here.  Section 29 of the Standard Terms states, in relevant part,

**Dispute Settlement Procedures**

In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators.  If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrator or panel or [sic] arbitrators.  If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment.

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 2

1    Divino Declaration, Exhibit C, p. 17-18.

2    Section 3 of the Standard Terms, as signed by plaintiff, states,

3    **Free Passage from the Point of Hire to the Port of Embarkation**

4    The seafarer shall join the vessel or be available for duty at the date and time specified
     by the employer.  The seafarer shall travel by air or as otherwise directed at the expense
5    of the employer.

6    Divino Declaration, Exhibit C, p. 3.

7        As noted above, this provision was actually altered for the time of plaintiff's employment by a

8    Supplemental Agreement between HAL and AMOSUP.  The Supplemental Agreement provided for a

9    Gratuity Plan for certain shipboard hotel and beverage personnel, by which they could earn additional

10   money through gratuities (which formerly were prohibited).  In exchange for the increased opportunity to

11   earn money, these employees would be required to reimburse HAL for the funds advanced by HAL to

12   transport the employee to the port of embarkation.

13       Before leaving the Philippines, plaintiff signed an acknowledgment that he had attended a

14   presentation on the new Gratuity Plan and its provisions, and that he accepted the terms.  Plaintiff's class

15   action complaint complains that this reimbursement was wrongfully and unlawfully "extracted" from him

16   and from other Filipino seamen.[3]   That is the basis of his claim under the Seaman's Wage Act.

17

18       Defendant asserts in this motion that under Section 29 of the Standard Terms, set forth above,

19   plaintiff is required to arbitrate his claim in the Philippines.  The motion is brought pursuant to the terms

20   of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards

21   ("Convention"), codified at 9 U.S.C. § 201 *et seq.*  Plaintiff asserts in opposition to this motion that under

22   the mandatory jurisdiction provision of the Seaman's Wage Act, 46 U.S.C. § 10313, the arbitration

23   clause is without effect.  Plaintiff also contends that this mandatory jurisdiction takes precedence over the

24

25       [3]From the record before the Court, it appears that plaintiff is apparently one of a total of two
     Filipino seamen to complain of this provision.  The other seaman, Romano Marcella, was terminated by
26   HAL after he vigorously opposed the reimbursement provision the Gratuity Plan.  His complaint went to
     arbitration in the Philippines, where he won on his claim of wrongful termination.
27

28

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 3

Convention.  Resolution of this dispute requires consideration of the purpose and effect of the Seamen

Protection and Relief Act, 46 U.S.C. § 10301 *et seq*., and its various provisions, together with the

provisions and purpose of the Convention.

DISCUSSION

The Seaman's Wage Act protects seafarers by ensuring that they receive timely payment

of wages.  *Mateo v. M/S Kiso*, 41 F. 3d 1283,1289 (9th Cir. 1994).  The full wage provision requires

prompt payment of wages at the end of the voyage:

> At the end of a voyage, the master shall pay each seafarer the balance of wages due the
> seafarer within 24 hours after the cargo has been discharged or within 4 days after the
> seafarer is discharged, whichever is earlier. . . .

> When payment is not [timely] made . . . without sufficient cause, the master or owner
> shall pay to the seafarer 2 days' wages for each day payment is delayed.

46 U.S.C. § 10313(f), (g).  Necessary to recovery under the provision is a showing that (1) the voyage

has ended, (2) either the cargo or the seafarer has been discharged, and (3) payment was withheld

without cause.  *Mateo*, 41 F. 3d at 1289.  The provision has specifically been made applicable to a

seafarer on a foreign vessel, but only when it is in a harbor of the United States.  46 U.S.C. § 10313(i).  It

is undisputed that the vessel upon which plaintiff worked was a foreign-flag vessel, and that he was

discharged at a port of the United States.

The "mandatory jurisdiction" provision appears in this same subsection, stating that "[t]he courts

are available to the seaman for the enforcement of this section."  *Id*.  Thus, foreign seamen may sue in

the United States courts for wage claims, but those claims may be determined according to foreign law.

*Strathearn S.S. Co. v. Dillon*, 252 U.S. 348 (1920).  The purpose of the provision is to provide a remedy

to foreign seamen discharged at United States ports who might otherwise be destitute and stranded.  *See,*

*Su v. M.V. Southern Aster*, 767 F. Supp. 205, 1990 AMC 1217 (D.Or. 1990); *affirmed,* 978 F. 2d 462

(9th Cir. 1992).  Another purpose of the extension to foreign-flag vessels is to enhance the

competitiveness of American shipping lines, by "leveling the playing field" between American and

foreign-flag vessels with respect to wage claims.  *Su*, 978 F. 2d at 471; *citing* 50 Cong. Rec. 55748-49

(Oct. 22, 1913).

Discharge in a United States port is thus a jurisdictional prerequisite to suit.  *Id*.  That

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 4

prerequisite has been met here.  However, defendant contends that this Court should exercise that jurisdiction to enforce the arbitration clause in Section 29 of the Standard Terms, as required under the Convention.  Under the Convention, an agreement to arbitrate must be enforced if four conditions are met: (1) there is an agreement in writing to arbitrate; (2) the agreement provides for arbitration in the territory of a signatory to the convention; (3) the agreement to arbitrate arises out of a commercial legal relationship; and (4) there is a party to the agreement who is not an American citizen.  *Bautista v. Star Cruises*, 396 F. 3d 1289, 1294 n. 7 (11th Cir. 2005).  All four requirements are met here.[4]

Plaintiff offers a number of arguments to oppose arbitration.  First, plaintiff asserts that HAL is not a party to the Collective Bargaining Agreement ("CBA"), so arbitration is optional rather than mandated by Section 29 of the Standard Terms.  The Court examined the relevant documents at the oral argument and determined that HAL is indeed a party to the CBA dated July 7, 2004.  Therefore, Section 29 of the Standard Terms requires submission of plaintiff's claim to arbitration, absent controlling law to the contrary.

The essence of plaintiff's opposition is his assertion that under controlling law, the arbitration clause is void.  He points to § 10317 of the Seamen Protection and Relief Act, Chapter 103 of Title 46, which states,

> A master of seaman by any agreement other than one provided for in this chapter may not forfeit the master's or seaman's lien on the vessel or be deprived of a remedy to which the master or seaman otherwise would be entitled for the recovery of wages.  A stipulation in an agreement inconsistent with this chapter, or a stipulation by which a seaman consents to abandon a right to wages if the vessel is lost, or to abandon a right the seaman may have or obtain in the nature of salvage, is void.

46 U.S.C. § 10317.

In response to this contention, defendant cites the statutory language in the opening section of this chapter, which exempts foreign vessels, unless "otherwise provided".   46 U.S.C. § 10301(c).  While §

---

[4] Plaintiff contends that Congress in adopting the Convention expressed an intent that seamen's employment contracts be deemed non-commercial and therefore exempt from application of the Convention.  Although it appears that this contention has not been addressed by the Ninth Circuit Court of Appeals, the Court adopts the reasoning of the Fifth And Eleventh Circuits in finding that seamen employment contracts, and the arbitration provisions therein, are "commercial legal relationships within the meaning of the Convention Act."  *Bautista*, 396 F. 3d at 1300; *see also Francisco v. Stolt Achievement MT*, 293 F. 3d 270, 274 (5th Cir. 2002).

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 5

1   10313 contains a provision specifically making that section applicable to foreign vessels, § 10317 does

2   not.  Nevertheless, plaintiff contends that pursuant to historic maritime law, no seaman could be forced to

3   abandon his judicial remedy under the Wage Act.  He contends that the 1983 re-codification of that law

4   effected no substantive change in the traditional law, so § 10317 by implication must apply to a foreign

5   vessel.

6          Plaintiff provided the Court, post-hearing, with legislative history materials regarding the 1983 re-

7   codification of the maritime laws.  Dkt. # 30.  Page 1 of the Senate Report of the Committee on

8   Commerce, Science, and Transportation states that the purpose of the re-codification was to "re-state

9   without substantive changes of a controversial nature, the existing laws . . . governing commercial

10  shipping."  S.Rep. No. 98-56 at 1 (April 12, 1983).   The re-codified § 10317 is substantially the same as

11  the former § 600 of Title 46, and like it, standing alone, is silent as to application to foreign flag vessels.

12         It is a rule of statutory construction that the Court should turn to legislative history only when a

13  statute is ambiguous or contradictory.  If the statutory language is clear and unambiguous, " 'that

14  language must ordinarily be regarded as conclusive.' "  *North Dakota v. United States,* 460 U.S. 300, 312

15  (1983) (citation omitted).    The operative section here is clear and unambiguous in stating that "[u]nless

16  otherwise provided, this chapter does not apply to a foreign vessel."  46 U.S.C. § 10301.  The Court may

17  not read the legislative history to alter this statute's "unmistakable directive."  *In re U.S. for an Order*

18  *Authorizing Roving Interpretation of Oral Communication*, 349 F. 3d 1132, 1144  (9th Cir. 2003).

19  Nor may one of the Wage Act's underlying purposes—the protection of seamen discharged at United

20  States ports—trump the statute's very plain language set forth in the introductory section, § 10301(c);

21  that would "violate a basic tenet of statutory construction."  *Su v. M/V/ Southern Aster*, 978 F. 2d 462,

22  471 (9th Cir. 1972).

23         Further, the Court finds no conflict between the promise of "no substantive changes" and the clear

24  language of § 10301(c).  The Court presumes that Congress knew exactly what it was saying with this

25  very clear language regarding foreign-flag vessels, and that this language did not in fact effect a

26  substantive change in the law.  Congress has since 1983 amended the maritime laws set forth at 46 U.S.C.

27  § 10301 *et seq.* to correct any errors or inconsistencies  that resulted from the reorganization.  *See,*

28

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 6

*Kaluom v. Stolt Offshore, Inc.*, — F. 3d ----, 2007 WL 2938711 at * 7 (5th Cir., October 10, 2007).

Section 10301(c) and § 10317 remain untouched.

Finally, plaintiff argues that under controlling Supreme Court authority, a seaman's wage claim cannot be forced into arbitration. *U.S. Bulk Carriers v. Arguelles*, 400 U.S. 351 (1971).   Plaintiff has cited to a number of cases which maintain this position. However, on December 29, 1970, after the *Arguelles* case was argued, but before the opinion was issued, Congress passed implementing legislation to adopt the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. §§ 202-208.  *See, Lobo v. Celebrity Cruises, Inc.,* 488 F. 3d 891, 894 (11th Cir. 2007).   The Convention, to which both the United States and the Philippines are parties, provides that

> [e]ach contracting State shall recognize an agreement in writing under which the parties undertake
> to submit to arbitration all or any differences which have arisen . . . between them
> in respect of a defined legal relationship, whether contractual or not, concerning a subject
> matter capable of settlement by arbitration.

*Id.*, *quoting* Convention, Article II(1).

Recently, courts of the Eleventh Circuit, and at least one district court in this circuit, have explained that by ratifying the Convention, Congress explicitly agreed to recognize agreements to submit to arbitration. "Indeed, the Convention *compels* federal courts to direct qualifying disputes to arbitration. . . ."  *Id.* at 895 (emphasis in original).   The Eleventh Circuit Court cited an earlier decision in which it stated that "to read industry-specific exceptions into the broad language of the Convention Act would be to hinder the Convention's purpose."  *Id.*, citing *Bautista v. Star Cruises*, 396 F. 3d 1289, 1299 (11th Cir. 2005).   The appellate court then ruled that the Convention was applicable, and thus dismissal in favor of arbitration was appropriate.  *Id.* at 896.

The rule established in *Lobo*, requiring arbitration of a foreign seaman's Wage Act claim, has been followed by at least one district court in this circuit.  *See*, *Rogers and Kar v. Royal Carribean Cruise Lines*, C06-4574-SVW (C.D.Cal., January 24, 2007) *citing Lobo v. Celebrity Cruises*, 426 F. Supp. 2d 1296, 1309 (S.D.Fla 2006).   The plaintiff's appeal of that ruling is now pending before the Ninth Circuit Court of Appeals.  Unless and until the district court's ruling is reversed, this Court may reach the same

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 7

1   conclusion as the California District Court did.

2        Plaintiff contends that the Court should not follow the more recent line of cases but should apply

3   *Arguelles*.  Plaintiff asserts that *Arguelles* was actually decided **after** Congress approved the Convention,

4   and therefore the Supreme Court impliedly considered it.  According to plaintiff, and contrary to the

5   court's recitation in *Lobo*, Congress actually approved the Convention Act on July 31, 1970, six months

6   before the Supreme Court's decision in *Arguelles*.  While the December 29, 1970, date cited in *Lobo*

7   was the date the Act became effective in the United States, it was approved by Congress before that.

8   Therefore, according to plaintiff, the Supreme Court must have taken the convention into account when

9   deciding *Arguelles*.   However, a reading of *Arguelles* reveals absolutely no mention of or reference to

10  the Convention.  This Court cannot find in that silence any ruling whatsoever on the application of the

11  Convention under the circumstances presented here.   Although the Supreme Court is presumed to know

12  the contents of the recent legislation, where the application of that recent legislation to issues before it

13  was never briefed, it cannot be said that the Court actually considered it.

14       This Court therefore finds that the Convention, not *Arguelles*, controls the outcome here.  This is

15  consistent with a post-*Arguelles* pronouncement on the Convention, in which the Supreme Court noted a

16  strongly persuasive public policy in favor of uniform enforcement of arbitration agreements, "despite the

17  potential presence of parochial policies present in other parts of the U.S. Code."  *Scherk v. Alberto-*

18  *Culver Co.,*, 417 U.S. 506, 520 n. 15 (1974).

19          The goal of the Convention, and the principal purpose underlying American adoption and
20          implementation of it, was to encourage the recognition and enforcement of commercial arbitration
            agreements and international contracts and to unify the standard by which the agreements to
21          arbitrate are observed and arbitral awards are enforced by signatory countries.

22  *Id*.  This statement is consistent with the strong presumption in favor of enforcing arbitration provisions,

23  especially in the realm of international commerce.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*

24  *Inc.*, 473 U.S. 614, 631 (1985).

25       Plaintiff asserts that enforcement of the arbitration agreement here would be contrary to the public

26  policy favoring protection of foreign seamen by application of the laws of the United States.  The Court

27  does not agree.  The Philippine government has expressed a strong interest of its own in regulating and

28

  ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 8

overseeing the hiring policies and employment contracts of Filipino workers employed by foreign companies. To that end, the government has put in place a comprehensive system to protect Filipino workers on foreign vessels, as set forth in the POEA and the Standard Terms. According to plaintiff's own expert, the POEA exists "to protect the rights of Filipino workers for overseas employment to fair and equitable recruitment and employment practices and ensure their welfare." Affidavit of Joseph Capuyan, ¶ 6(c). Further, the purpose of the POEA is to "[e]xercise original and exclusive jurisdiction to hear and decide all claims arising out of an employer-employee relationship." *Id*. at ¶ 6(d). That purpose is only furthered if this Court compels plaintiff to abide by the agreement he signed and submit to arbitration of his claim in the Philippines, as the Standard Terms require. In the interest of comity, this Court feels compelled to recognize the declared interest of the Philippine government in having disputes involving Filipino seamen resolved in the Philippines and according to the POEA.

Plaintiff protests that he will have no meaningful remedy in the Philippines, particularly in the form of a class action. Plaintiff's argument regarding the availability of a remedy is refuted by the Philippine NLRC arbitration decision in *Marcella*, finding wholly for the plaintiff seaman in that matter, and awarding monetary damages. Further, defendants have provided a declaration stating that contrary to plaintiff's assertion, class action is available as a remedy in the Philippines. *See*, Declaration of Arturo Del Rosario, ¶ 8. Plaintiff's protest is thus without a factual basis.

CONCLUSION

The Court thus concludes that *Arguelles* does not preclude enforcement of the arbitration agreement here under the Convention. Furthermore, the Court concludes that 46 U.S.C. § 10317, which may void a seaman's agreement to forgo litigation in favor of arbitration, does not apply to a foreign flag vessel such as the one upon which plaintiff worked. Accordingly, defendant's motion to compel arbitration and dismiss this complaint is GRANTED. This dismissal is without prejudice to plaintiff's right to return to this Court for the limited purpose of enforcement of an arbitral award.

DATED this 20 day of November 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION TO COMPEL
ARBITRATION - 9